| .PICKETT, Judge.

FACTS

Brannon Trahan is a licensed private investigator. On March 16, 1995, Trahan and his partner were working in Scott, Louisiana, conducting surveillance. Tra-han was sitting in the public parking lot in his truck at Scott City Hall. His job was to follow the individual under surveillance when he received word via radio from his partner that the subject had left home.
While Trahan was parked in the Scott City Hall parking lot, a city employee approached him and asked if she could help him. He told her he was working in the area. Unsatisfied with this explanation, she called the Scott Police Department and reported a suspicious person sitting in the parking lot. Two officers were dispatched to the parking lot.
Mr. Trahan was asked to exit his vehicle. The trial court made a specific finding that he refused to do so until he had been asked several times. He was asked his name and to produce identification. He refused to do either and refused to disclose why he was parked there. Upon his refusal to identify himself, Mr. Trahan was handcuffed by the officers and patted down and read his Miranda rights. His wallet was removed from his pocket and searched. At this time the officers discovered his private investigator’s license. After confirming he in fact was a private investigator, Trahan was released and told the next time he was working in Scott he was to check in with the city police first.
Following a trial, the trial court found in favor of the City of Scott and dismissed the plaintiffs claim of unlawful detention and false imprisonment. From this ruling, the plaintiff appeals.

\2discussion

The appellant asserts three assignments of error as follows:
1) The trial court erred in determining that the defendants had a right to stop and/or encounter Trahan when they were unable to articulate any crime that they reasonably suspected Trahan of committing at the time, committed previously, or was about to commit.
2) The trial court erred in determining that the patting down and/or searching of Trahan was reasonable where there was no reasonable articulation that the officers were in any danger.
3) The trial court erred in determining a search of Trahan’s wallet was reasonable where the officers could not articulate that they reasonably believed that the wallet was a dangerous weapon.
All three assignments of error relate to the reasonableness of the officers’ actions and the legality of Mr. Trahan’s detention. They will, therefore, be discussed together. The applicable law to be applied in determining whether an investigatory stop by a law enforcement official is lawful is set forth in La.Code Crim.P. art. 215.1, which states in pertinent part:
A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
B. When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person.
The actions of the Scott city police officers must be examined and analyzed to *27 determine if (1) a legal basis existed for them to stop the appellant, and (2) if such a basis existed, whether the officers had the right to physically restrain and search the appellant.
In Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), upon which La.Code Crim.P. art. 216.1 is based, the Supreme Court said that an investigatory stop is only acceptable “when law enforcement officials are able to point to ‘specific and articulable facts which, when taken together with rational inferences from those facts, reasonably warrant that intrusion.’ ” Terry, 392 U.S. at 20, 88 S.Ct. at 1879.
The trial court determined the officers acted reasonably in reacting to a “very suspicious vehicle.” However, the record fails to establish what, if any, behavior on the appellant’s part was suspicious. The appellant was sitting in his vehicle in a public parking. When approached by a city employee and asked if he could be helped, he responded he was working in the area. Nothing about this behavior is inherently suspicious.
The police officers claim their suspicions were raised because he refused to exit his vehicle when ordered to do so, refused to identify himself, and had on the front seat of his vehicle what they considered to be suspicious items, namely, a radio microphone, binoculars, and camera equipment. The officers did not explain why they considered these items to be suspicious.
Law enforcement officials are not authorized to stop an individual and question them at all unless, as clearly set forth in art. 215.1, they reasonably suspect the individual “is committing, has committed, or is about to commit an offense ...” In their testimony the police officers admitted they had no knowledge or suspicion that the appellant had committed any crime. They could articulate no actions on the part of the appellant which would lead them to suspect he was about to commit an offense. It is obvious, from the record, the appellant was stopped and questioned because no one knew him.
Because the law enforcement officers had no legal basis to stop the appellant Land question him, he was not required to give them the identifying information requested and he was legally justified in refusing to identify himself. The actions of the police officers which followed were unwarranted and unjustified under our law.
After appellant exited his vehicle on orders from the officer and refused to identify himself, he was ordered to put his hands on his vehicle. An officer then kicked his legs apart, patted him down, and emptied his pockets. He was read his Miranda rights. His wallet was searched. It was while searching his wallet that the officers found his private investigator’s license. Upon determining the appellant was a private investigator, the officers released him and told him in the future to check in with them when working in Scott.
The appellant argues the actions of the police officers resulted in his false imprisonment for which he is entitled to compensation. The tort of false imprisonment has two essential elements: (1) detention of a person; and (2) the unlawfulness of such detention. Fontenot v. Lavergne, 365 So.2d 1168 (La.App. 3 Cir.1978); Touchton v. Kroger Co., 512 So.2d 520 (La.App. 3 Cir.1987). Unlawful detention is restraint without color of legal authority. Kyle v. City of New Orleans, 353 So.2d 969 (La.1977).
There is no question the appellant was detained. Stopping an individual, frisking him and placing him in handcuffs while his personal belongings are searched can be considered nothing less than a detention. A determination must be made as to whether the detention was unlawful.
*28 The plaintiff has carried his burden of proving the arrest was made with no legal authority. The officers were unable to articulate any reasonable basis for suspecting him of any past, present or future criminal activity. Simply put, they had | ¡¡absolutely no authority to stop him and question him. Citizens are not required to respond to inquiries from law enforcement officers who have no basis for suspecting any criminal activity. Because they had no basis for initially stopping him, they had no authority under the law to demand his identity, search him and handcuff him.
Because the officers did commit the tort of false imprisonment, the appellant is entitled to be compensated for any damages he might have suffered. The appellant has admitted he suffered no real physical injuries as a result of his encounter with the Scott police officers. The record establishes some degree of emotional distress and embarrassment. The appellant lost half a day at work, and testified is afraid to go through Scott. We find $1,000.00 to be an appropriate amount of general damages. The appellee is cast with all costs of these proceedings.
REVERSED AND RENDERED.