930 So.2d 1028 (2006)
STATE of Louisiana
v.
Michael CLAY.
No. 06-KA-37.
Court of Appeal of Louisiana, Fifth Circuit.
April 25, 2006.
*1030 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District, Parish of Jefferson, Terry M. Boudreaux, Assistant District Attorney, Gretna, Louisiana, for Plaintiff/Appellee.
Gwendolyn K. Brown, Attorney at Law, Louisiana Appellate Project, Baton Rouge, Louisiana, for Defendant/Appellant.
Panel composed of Judges JAMES L. CANNELLA, MARION F. EDWARDS, and WALTER J. ROTHSCHILD.
WALTER J. ROTHSCHILD, Judge.
On April 20, 2005, the Jefferson Parish District Attorney filed a bill of information charging defendant, Michael Clay, with possession of cocaine, a violation of LSA-R.S. 40:967 C. Defendant was arraigned on April 21, 2005, and pled not guilty.
Defendant filed various pre-trial motions, including a motion to suppress evidence. The trial court heard and denied the motion on June 16, 2005.
On August 5, 2005, the trial judge advised defendant of his constitutional rights in accordance with Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Defendant indicated he understood his rights and wished to waive them and enter a guilty plea. He reserved his appeal rights under State v. Crosby, 338 So.2d 584 (La.1976).
Following defendant's guilty plea, the State filed a habitual offender bill of information, alleging defendant to be a second felony offender. The trial judge advised defendant of his right to remain silent and his right to a habitual offender hearing. Defendant waived his rights and entered an admission to the habitual offender allegations. In accordance with a sentencing agreement, the court imposed a sentence of two and one-half years at hard labor. The judge ordered that the sentence be served concurrently with any other sentences defendant was serving.
This timely appeal followed. Defendant argues that the trial court erred in denying his motion to suppress the evidence. For the reasons stated herein, we find this argument to have merit and we therefore reverse the trial court's ruling.

FACTS
The facts surrounding the instant charge are found in the suppression hearing testimony of Deputy Christy Franklin of the Jefferson Parish Sheriff's Office. Deputy Franklin testified that on March 17, 2005, an anonymous caller reported that he or she had heard gunfire in the 900 block of Pailet Street. When the officer arrived in the area, she saw defendant and another man walking in the 800 block of Pailet Street. The two were walking from *1031 the block where the shots were alleged to have been fired.
Deputy Franklin testified that she and her partner, Deputy Shannon Johnson, stopped the two men. The officers conducted a field interview with defendant while Deputy Johnson did a pat-down frisk of his outer clothing for weapons. The second subject was also frisked and interviewed. Deputy Johnson told Deputy Franklin he had detected something in defendant's clothing that felt like drugs. Deputy Franklin testified that Deputy Johnson recovered a rock of crack cocaine from defendant's pants pocket.
The officers took defendant into custody. Deputy Franklin testified that she conducted a second pat-down search of defendant before transporting him to the Jefferson Parish Correctional Center. The officer did not testify that anything else was found on defendant's person.

DISCUSSION
Defendant complains that Deputies Franklin and Johnson did not have reasonable suspicion to stop him and conduct a pat-down frisk, and that the resulting seizure of cocaine was, therefore, unlawful.[1] Defendant moves this Court to reverse the trial court's denial of his motion to suppress evidence.
The Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution protect individuals from unreasonable searches and seizures. But the right of law enforcement officers to stop and interrogate those reasonably suspected of criminal conduct is recognized by LSA-C.Cr.P. art. 215.1 and by state and federal jurisprudence. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984).
Although Article 215.1 permits an officer to stop a citizen in a public place and question him, such an investigatory stop must be based upon reasonable suspicion that the individual has committed, or is about to commit, a criminal offense. State v. Temple, 02-1895, p. 4 (La.9/9/03), 854 So.2d 856, 860; State v. Collins, 04-751, p. 3 (La.App. 5 Cir. 11/30/04), 890 So.2d 616, 618. The detaining officer "`must have a particularized and objective basis for suspecting the particular person stopped of criminal activity....'" State v. Collins, supra, quoting United States v. Cortez, 449 U.S. 411, 417-418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981). Moreover, the officer must be able to articulate specific facts upon which his suspicion is based. State v. Becnel, 04-1266 (La.App. 5 Cir. 5/31/05), 904 So.2d 838, 852.
In determining whether an investigatory stop was justified by reasonable suspicion, a reviewing court must consider the totality of the circumstances, "giving deference to the inferences and deductions of a trained police officer `that might well elude an untrained person.'" State v. Huntley, 97-0965 (La.3/13/98), 708 So.2d 1048, 1049 (per curiam), quoting Cortez, 449 U.S. at 418, 101 S.Ct. at 695. Factors that may support reasonable suspicion for an investigatory stop include an officer's experience, his or her knowledge of recent criminal patterns, and his or her knowledge of an area's frequent incidence of crime. State v. Mitchell, 04-136 (La.App. 5 Cir. 6/29/04), 877 So.2d 1151, 1155.
The State bears the burden of proof in establishing the admissibility of evidence seized without a warrant. LSA-C.Cr.P. *1032 art. 703 D. The trial court's decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression. State v. Cooley, 03-418 (La.App. 5 Cir. 9/30/03), 857 So.2d 1209, 1216, writ denied, 03-3107 (La.3/12/04), 869 So.2d 818. If evidence is derived from an unreasonable search or seizure, the proper remedy is to exclude the evidence from trial. State v. Becnel, supra.
Defendant argues that an anonymous report of gunfire and his presence in the area were not sufficient to support reasonable suspicion for an investigatory stop. Under certain circumstances, an informant's tip can provide reasonable suspicion to detain and question a person. Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990); State v. Smith, 00-1838 (La.5/25/01), 785 So.2d 815, 816 (per curiam). Whether an informant's tip creates reasonable suspicion necessary to justify an investigatory stop is determined by considering the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 214, 103 S.Ct. 2317, 2320, 76 L.Ed.2d 527 (1983); State v. Boss, 04-457, p. 6 (La.App. 5 Cir. 10/26/04), 887 So.2d 581, 586. The anonymous caller's ability to predict the suspect's future behavior goes toward proving reliability, as it demonstrates inside information and a special familiarity with the suspect's affairs. See, Alabama v. White, 496 U.S. at 332, 110 S.Ct. at 2417; State v. Boss, supra. Independent corroboration of the details of an informant's tip by police investigation is valuable to the totality of the circumstances analysis. State v. Boss, supra. A non-predictive anonymous tip paired with either police corroboration or independent police observation of unusually suspicious conduct can provide police with the reasonable suspicion needed to temporarily detain the suspect. Id. "[I]f a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable." Alabama v. White, 496 U.S. at 330, 110 S.Ct. at 2416. See also, State v. Boss, supra.
The evidence adduced at the suppression hearing shows that the officers did not have reasonable suspicion to stop defendant. First, the anonymous tip had a low degree of reliability. Deputy Franklin testified that the caller did not report having seen someone firing a gun; rather, this person had only heard gunshots. Further, there was no description given of a perpetrator. Deputy Franklin could not say how long it took her to get to Pailet Street after she was dispatched. The greater the time span, the less likely it was that the perpetrator would still be at or near the scene. While the officer had reason to believe a crime (illegal discharge of a firearm) had been committed, she did not have reasonable suspicion that defendant had committed a crime. Deputy Franklin testified that neither defendant nor his companion exhibited behavior that indicated they were carrying weapons. She stopped them because they happened to be in the area where the gunfire was reported.
The officer stated she knew the street where she saw defendant as a high crime area with a great deal of drug activity. However, a person's mere presence in a high crime area, without more, does not provide police with reasonable suspicion based upon articulable facts to make an investigatory stop. See, State v. Washington, 03-1134 (La.App. 5 Cir. 2/10/04), 866 So.2d 1058, 1062. See also, State v. Blasio, 98-0077 (La.App. 4 Cir. 10/21/98), 720 So.2d 749, 750 ("A stop in which a defendant is merely walking in a high crime area is unjustified").
*1033 In State v. Cabler, 526 So.2d 1177 (La. App. 3 Cir.1988), police investigated a complaint by a man who said he had been beaten by three "biker-type fellows," two of whom wore their hair in pony-tails, and a third who had long hair. The man said his attackers had run into a group of people standing nearby. The officers did not ascertain the victim's name, or how much time had elapsed since the altercation. The victim then left the scene, and was never interviewed again.
The officers in Cabler ordered several men and women in the group to stand against a wall so they could be searched for the weapon that had been used to strike the victim. The defendant was among those searched. An officer felt what he believed was a knife in the defendant's pocket. When he pulled the object out, he discovered it was a prescription bottle containing lysergic acid diethylamide tablets. The defendant was placed under arrest, and the officers recovered a bottle of diazepam tablets when he was searched incident to arrest.
The defendant in Cabler was charged with possession of the illegal drugs. He filed a motion to suppress the evidence seized from his person, which the district court denied. The defendant applied for supervisory writs from the district court's ruling. The Third Circuit reversed the trial court's ruling, finding that the police officers did not have reasonable suspicion to stop and frisk the defendant. The court reasoned that the stop was based on a vague description given by an unknown victim. The officers simply went in the direction where the victim said his attackers fled, and searched the first people they came across who looked like biker types. The victim did not file a complaint or identify his assailants, and the officers did not ascertain how much time had elapsed since the attack. Cabler, 526 So.2d at 1182.
The facts in the instant case are comparable to those in Cabler, in that the officers responded to a report made by an unknown complainant, and they simply approached the first people they saw in the area. The officers in the instant case had even less to go on than those in Cabler, since they never spoke to the complainant, and they did not have even a vague description of the perpetrators.
The holding in State v. Sneed, 95-2326 (La.App. 4 Cir. 9/11/96), 680 So.2d 1237, writ denied, 96-2450 (La.3/7/97), 689 So.2d 1371, also supports defendant's position. In that case, police officers received information from an untested confidential informant that wholesale heroin distribution was taking place at a particular residence. The police set up surveillance of the house that day, and officers saw defendant stop his car and enter the house. A short time later, the defendant exited and drove away from the house. Police stopped the defendant and a subsequent search of the vehicle yielded nineteen packets of heroin from under a seat. The Fourth Circuit held that the officers did not have reasonable suspicion to stop a defendant after he briefly visited a residence that was under surveillance for drug activity. The court reasoned, in part, that there was no testimony that the area had a reputation for drug trafficking or that there had been a succession of brief visits to the house by other individuals. Sneed, 95-2326 at p. 4, 680 So.2d at 1239. As in the instant case, the officers in Sneed based their stop solely on information received from a confidential informant without having the information verified by independent investigation.
See also, State v. Temple, 02-1895 (La.9/9/03), 854 So.2d 856, in which the Louisiana Supreme Court reversed the defendant's cocaine conviction upon finding that police officers did not have reasonable suspicion for an investigatory stop. In *1034 that case, two New Orleans police officers responded to a report of an attempted burglary. The victim informed the officers that four individuals had attempted to enter her apartment without her permission. The officers inspected the outside of the apartment building and found four individuals sitting on a front porch step.
When they saw the officers, a male subject "quickly leaned against the wall," and a woman and the defendant sat down. The defendant handed the woman a white object. She placed it in her pocket and attempted to walk away. One of the officers testified that at that point, he "`formulated a plan to try to stop the persons to interview them for, ah, interview purpose or whatever...'" The officers "detained" all four subjects. Temple, 854 So.2d at 858. A female officer was summoned to conduct a "pat-down" search of the woman. Sixty bags of cocaine and 141 pieces of crack cocaine were found in her pocket. The woman said the defendant had told her to hold the object he had handed her. The defendant was the only person arrested. Id. The Temple court concluded that the evidence was unlawfully seized because the police lacked reasonable suspicion of criminal activity when they detained the defendant and his companions.
In the present case, the record fails to contain any evidence to support reasonable suspicion necessary for an investigatory stop. The information contained in the anonymous tip was not specific and predictive enough to create reasonable suspicion that defendant was engaged in criminal activity. Further, the record fails to contain sufficient evidence that the officers had reasonable suspicion in observing defendant that a crime had been committed. Accordingly, we conclude that the officers were not justified in stopping defendant, and the evidence seized during the course of this stop was unlawfully obtained.
Finally, the record was reviewed for errors patent according to La.C.Cr.P. art. 920, and no errors patent were found.

DECREE
For the reasons set forth above, the trial court ruling denying the defendant's motion to suppress is set aside and reversed. We hereby vacate the defendant's conviction and sentence, and we remand the matter for further proceedings. See, State v. Tovar, 03-513 (La.App. 5 Cir. 10/15/03), 860 So.2d 51, 57.
REVERSED AND REMANDED.
NOTES
[1] Defendant does not ask this Court to review the pat-down and seizure. He only challenges the initial stop.