971 So.2d 1219 (2007)
STATE of Louisiana
v.
Jamal J. ANTHONY (multiple-billed as "Jamal Anthony") and Jamon J. Anthony.
No. 07-KA-204.
Court of Appeal of Louisiana, Fifth Circuit.
November 27, 2007.
Rehearing Denied January 14, 2008.
*1221 Paul D. Connick, Jr., District Attorney, Terry Boudreaux, Anne Wallis  Appellate Counsel, Vincent Paciera, Jr.  Trial Counsel, Assistant District Attorneys, Gretna, LA, for Appellee, State of Louisiana.
Mary E. Roper, Attorney at Law, Louisiana Appellate Project, Baton Rouge, LA, for Appellants, Jamal J. Anthony and Jamon J. Anthony.
Panel composed of Judges MARION F. EDWARDS, SUSAN M. CHEHARDY, and GREG G. GUIDRY.
*1222 SUSAN M. CHEHARDY, Judge.
On March 3, 2006, the Jefferson Parish District Attorney's Office filed a bill of information charging defendants, Jamal J. Anthony and Jamon J. Anthony, with possession of heroin, a violation of La. R.S. 40:966(C), and possession with intent to distribute cocaine, a violation of La. R.S. 40:967(A). The State subsequently nolle prossed the possession of heroin charge against Jamon Anthony and agreed not to file a multiple offender bill of information.[1] At their arraignments, both defendants pled not guilty.
Jamon Anthony filed a Motion to Suppress the Evidence, which the trial court denied. Subsequently, Jamal Anthony filed an omnibus motion that included a Motion to Suppress Confession, Identification, and Physical Evidence, which the trial court denied.
On June 28, 2006, both defendants withdrew their former pleas of not guilty and entered guilty pleas pursuant to State v. Crosby, 338 So.2d 584 (La.1976).[2] The trial court sentenced Jamon Anthony for possession with intent to distribute cocaine to fifteen years at hard labor, ordering the first two years to be served without benefit of parole, probation, or suspension of sentence. The trial court sentenced Jamal Anthony to 8½ years for possession of heroin and 15 years, with the first two years to be served without parole, probation, or suspension of sentence, for possession with intent to distribute cocaine. Both sentences were to be served at hard labor and to run concurrently.
The State thereafter filed a multiple offender bill alleging Jamal Anthony was a second felony offender. Jamal Anthony admitted to the allegations in the multiple offender bill. The trial court vacated the sentence originally imposed for the possession of heroin conviction, which was count one of the original bill of information, and sentenced the defendant to 8½ years at hard labor without benefit of probation or suspension of sentence to run concurrently with his other sentences.
Facts
Because both defendants' convictions were obtained as a result of guilty pleas, the following facts were obtained from testimony at the hearing on defendants' motions to suppress evidence. Detective Wayne Williams of the Gretna Police Department testified that, on February 3, 2006, he received a telephone call from a confidential informant with a tip that a *1223 black male nicknamed "Twin" would be delivering crack cocaine to the Oasis Motel located at 70 Westbank Expressway in Gretna that afternoon. The informant stated that "Twin" would be driving a newer-model, black Pontiac Grand Prix with chrome rims. Detective Williams stated that, in that past, the informant's tips had been used successfully to affect apprehensions and convictions.
When Detective Williams ran the nickname "Twin" through the computer, he received several names, but he could not remember if the defendants were included. Twenty or thirty minutes after receiving the call, Detective Williams and other members of the Gretna Police Department Criminal Investigation Division set up surveillance of the location using unmarked vehicles. At about 3:20 p.m. that day, Detective Williams observed a black Grand Prix on the Expressway just before it pulled into the parking lot of the Oasis Motel. When Detective Williams rode behind the vehicle, he observed that the vehicle had an expired, temporary license plate in the rear window.[3] The black Grand Prix then entered the motel's parking lot and parked. All three of the vehicle's occupants remained in the car.
Detective Williams informed the other officers via radio that this was the vehicle. When the officers converged on the vehicle, they stated that they were the police, ordered the driver to turn off the vehicle, and ordered the occupants to exit the car. Detective Williams agreed that basically his "officers approached the vehicle, guns drawn." The driver of the black Grand Prix attempted to flee by putting the vehicle into reverse and quickly backing out of the parking spot while officers stood behind the vehicle. The driver also revved the car's engine, "as though he was going to . . . strike one of the officers." Finally, the driver turned off his vehicle and "threw his hands up."[4]
When the driver opened his hands, Detective Williams, who was within ten feet from the car, saw the driver drop a white object from his right hand into the backseat. Detective Williams believed that the white object was narcotics. Because the officers were concerned that the men might be armed, all three men were removed from the vehicle and detained. The driver was identified as defendant, Jamal Anthony. The front-seat passenger was identified as defendant, Jamon Anthony. The backseat passenger was identified as Morris Clark.[5]
After the men were removed from the vehicle, Detective Williams checked the backseat of the vehicle and found a clear, plastic baggie that contained several off-white rocks on the floorboard of the driver's side. After the rocks field-tested positive for cocaine, Jamal Anthony was placed under arrest. In a search incident to his arrest, the officers found a foil packet containing some "brownish powder" in Jamal's possession. The powder field-tested positive for heroin.
Detective Richard Russ of the Gretna Police Department testified that, because he was in the direct path of the vehicle driven by the suspects, he was forced to draw his weapon when the vehicle continued "inching" towards him while its engine was being revved. Detective Russ testified *1224 that all the occupants of the vehicle were placed under arrest after narcotics were found inside the vehicle and no one claimed ownership of the contraband. Detective Russ searched Jamon Anthony incident to his arrest and found him in possession of a clear plastic bag containing an off-white rock-like substance, which field-tested positive for cocaine.[6]
In their sole assignment of error, the defendants argue the trial court erred in denying their motions to suppress because the police did not corroborate the information supplied by the confidential informant before they converged on their vehicle, blocked it from leaving the parking lot, and ordered them to exit. The defendants claimed that they were detained solely on information received about the model of the car and the nickname of one of the male occupants. Although the defendants admit that the information regarding the arrival of the described vehicle at the described location was accurate, they claim that the police did not witness any corroborating criminal behavior that suggested that they were in possession of drugs or engaged in criminal or illegal activity before converging on the vehicle and seizing them. Therefore, the stop was unjustified, the subsequent search was unlawful, and all of the evidence seized without a warrant or probable cause should have been suppressed.
The State argues that the police acted on a tip from a reliable confidential informant that contained sufficient predictive information to allow the police to determine that the informant had knowledge of the defendant's affairs and, thus, gave the police sufficient reasonable suspicion to make an investigatory stop. The State suggests that the details of the tip regarding future behavior allowed verification of its reliability before the stop was made. In addition, the State asserts that, even if the police had no legal right to stop the defendants based on the tip, they had the right to perform an investigatory stop because of an expired license tag, citing State v. Sherman, 05-779 (La.4/4/06), 931 So.2d 286.
A trial court's denial of a motion to suppress is afforded great weight, and it will not be set aside unless the preponderance of the evidence clearly favors suppression. State v. Gagnon, 01-1302 (La. App. 5 Cir. 4/10/02), 817 So.2d 167, 171. See also State v. Payne, 04-1084 (La.App. 5 Cir. 1/25/05), 894 So.2d 528, 530. Whether the officer had sufficient facts within his knowledge to justify an infringement on the individual's right to be free from governmental interference is determined under the facts and circumstances of each case. State v. Sam, 05-88 (La.App. 5 Cir. 5/31/05), 905 So.2d 379, 383-84, writ denied, 05-2100 (La.3/10/06), 925 So.2d 510.
The Fourth Amendment to the United States Constitution and the Louisiana Constitution Article I, § 5 protect individuals from unreasonable searches and seizures. State v. Massey, 03-1166 (La. App. 5 Cir. 1/27/04), 866 So.2d 965, 968. Law enforcement officers are authorized by La.C.Cr.P. art. 215.1, as well as state and federal jurisprudence, to conduct investigatory stops to interrogate persons reasonably suspected of criminal activity. State v. Sam, 905 So.2d at 383. "`A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about *1225 to commit an offense and may demand of him his name, address, and an explanation of his actions.'" La.C.Cr.P. art. 215.1(A); State v. Sims, 02-2208 (La.6/27/03), 851 So.2d 1039, 1043.
An investigatory stop necessarily involves an element of force or duress and the temporary restraint of a person's freedom. State v. Broussard, 00-3230 (La.5/24/02), 816 So.2d 1284, 1286. There is the complete restriction of movement in an investigatory stop, but for a shorter period of time than an arrest. Id. at 1287. Investigatory stops may be accompanied by features normally associated with an arrest, i.e., use of drawn weapons. Id. An investigatory stop is reasonable even when the police block a vehicle to prevent its occupant from leaving and approach with weapons ready or even drawn. Id. at 1288-89.
"`Reasonable suspicion' is required for an investigatory stop." State v. Nelson, 02-65 (La.App. 5 Cir. 6/26/02), 822 So.2d 796, 800, writ denied, 02-2090 (La.2/21/03), 837 So.2d 627. Reasonable suspicion is something less than probable cause to arrest, and requires that police officers have sufficient knowledge of facts and circumstances to justify an infringement of the individual's right to be free from government interference. State v. Massey, 866 So.2d at 968.
"Under certain circumstances, an informant's tip can provide reasonable suspicion to detain and question a person." State v. Clay, 06-37 (La.App. 5 Cir. 4/25/06), 930 So.2d 1028, 1032. An informant's tip may create reasonable suspicion necessary to justify an investigatory stop under the totality of the circumstances. Id. The "totality of the circumstances approach" applied by the United States Supreme Court considers an informant's veracity, reliability and basis of knowledge as highly relevant in determining the value of an informant's tip. State v. Nelson, 822 So.2d at 801, citing Illinois v. Gates, 462 U.S. 213, 214, 103 S.Ct. 2317, 2320, 76 L.Ed.2d 527 (1983).
An informant's past record for accuracy and reliability is only one factor taken into account when determining the reliability of the tip in question. State v. Austin, 04-993 (La.App. 5 Cir. 3/1/05), 900 So.2d 867, 879, writ denied, 05-0830 (La.11/28/05), 916 So.2d 143. An independent police investigation that corroborates details of the informant's tip is valuable in applying the totality of the circumstances analysis. State v. Clay, 930 So.2d at 1032. An unverified tip alone may not be sufficient to establish reasonable cause for the stop of the defendant. State v. Nelson, 822 So.2d at 801-02. However, the Supreme Court has held an unverified tip, when corroborated by independent police work, may exhibit sufficient indicia of reliability to justify stopping the suspects. State v. Nelson, 822 So.2d at 802, citing Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 2417, 110 L.Ed.2d 301 (1990).
In State v. Nelson, supra, the police received information on drug activity in the Bon Soir Motel, in Westwego, Louisiana, involving a suspect named "Tony" and a Pontiac Grand Am rental car. The police went to the motel and observed a car meeting the description. During their investigation, the police learned that the car would be at the McDonald's restaurant on Stumpf Boulevard in Gretna, Louisiana with large amounts of cocaine. The officers set up surveillance at the McDonald's restaurant and waited for the car. When the Grand Am arrived in the parking lot, the officers approached the car, identified themselves and had the occupants exit the car. State v. Nelson, 822 So.2d at 798. This court found that the confidential informant's tip was sufficiently corroborated *1226 by the information gained by the officers during their surveillance. Therefore, the officers had reasonable suspicion to make the investigatory stop. State v. Nelson, 822 So.2d at 803.
In the present case, like State v. Nelson, supra, the confidential informant, who had previously provided information that aided in apprehensions and convictions, provided a specific description of the vehicle and the location where the delivery of the drugs would take place. In addition, the informant also described the vehicle's driver was a black male nicknamed "Twin." Within twenty minutes of the tip, the police corroborated the reliable confidential informant's tip with surveillance of the Westbank Expressway and the motel's parking lot, which gave the police reasonable suspicion to stop the defendants.
If a law enforcement officer reasonably suspects that he is in danger, after he has stopped a person for questioning, he may frisk the outer clothing of the person for a dangerous weapon. The law enforcement officer may also search the person, if he reasonably suspects the person possesses a dangerous weapon. La. C.Cr.P. 215.1(B). After a lawful investigatory stop, a police officer may frisk a suspect only where a reasonably prudent person would be warranted in believing that his safety or that of others is in danger. State v. Sims, 851 So.2d at 1043. An officer's suspicion that he is in danger is not reasonable unless he can point to particular facts which led him to believe that the individual was armed and dangerous. State v. Sims, 851 So.2d at 1043-44. The police officer need not establish that it was more probable than not that the individual that he detained was armed and dangerous. It is sufficient if the officer establishes a "`substantial possibility'" of danger. State v. Sims, 851 So.2d at 1044.
In this case, Detectives Williams and Russ both testified that Jamal Anthony quickly backed the vehicle out of its parking spot when the officers approached and as officers stood behind it. In addition, Jamal Anthony revved the vehicle's engine "as though he was going to . . . strike one of the officers." Detective Williams testified that, based upon these actions, the officers feared that the suspects might have weapons. In addition, Detective Russ testified that he was forced to draw his weapon because Jamal Anthony continued "inching" toward him while he was standing in the direct path of the vehicle. Therefore, we believe a reasonably prudent person would be warranted in believing that his safety or that of others is in danger and, thus, justified in performing a safety patdown.
A search conducted without a warrant issued upon probable cause is per se unreasonable, unless it is justified by a specific exception to the warrant requirement. State v. Triche, 03-149 (La.App. 5 Cir. 5/28/03), 848 So.2d 80, 86, writ denied, 03-1979 (La.1/16/04), 864 So.2d 625. "In order for the plain view exception to the warrant requirement to apply, there must be prior justification for police intrusion into a protected area and it must be immediately apparent, without close inspection, that the item is contraband." State v. Gray, 06-298 (La.App. 5 Cir. 10/31/06), 945 So.2d 798, 802, writ denied, 06-2958 (La.9/14/07), 963 So.2d 993. A search incident to a lawful custodial arrest is also a limited exception to the constitutional prohibition of warrantless searches. State v. Sherman, 931 So.2d at 292.
The police may conduct a warrantless search of a person they have legally arrested in order to discover and seize evidence of the crime. State v. Doussan, 05-586 (La.App. 5 Cir. 2/14/06), 924 So.2d 333, 342, writ denied, 06-608 (La.10/13/06), 939 So.2d 372. The police can *1227 search the arrestee's person and the area within his immediate control in order to remove any weapons from his person and to prevent evidence from being destroyed. State v. Bergman, 04-435 (La.App. 5 Cir. 10/12/04), 887 So.2d 127, 130. The search area includes the passenger compartment of the vehicle and the contents of any open or closed containers found within the passenger compartment. State v. Bergman, 887 So.2d at 130. Even though a person is not in physical possession of a drug, he may have constructive possession when the drugs are under that person's dominion or control. State v. Schieffler, 00-1166 (La.App. 5 Cir. 2/13/01), 812 So.2d 7, 9, writ denied, 02-0712 (La.9/13/02), 824 So.2d 1188. The State has the burden of establishing the admissibility of evidence seized without a warrant, in a hearing on a defense motion to suppress the evidence. La. C.Cr.P. art. 703(D), State v. Manson, 01-159 (La.App. 5 Cir. 6/27/01), 791 So.2d 749, 755.
In the present case, when the occupants were removed from the vehicle, Detective Williams saw the clear, plastic bag containing off-white rocks in plain view on the floorboard of the vehicle. After off-white rocks field-tested positive for cocaine, Jamal Anthony was arrested.
Based on the foregoing, we find no error in the trial court's denial of defendants' motions to suppress. The police corroboration of the confidential informant's tip gave them reasonable suspicion to justify the stop. The evidence found by the police in plain view, during the stop, and in the search incident to arrest was lawfully seized.[7] This assignment of error lacks merit.
As is our practice, we have reviewed the record for errors patent, according to La.C.Cr.P. art. 920. Our review reveals that Jamal Anthony did not receive a complete advisal of the prescriptive period for filing for post-conviction relief at either the original sentencing or the habitual offender sentencing hearings, as required by La.C.Cr.P. art. 930.8. La. C.Cr.P. art. 930.8(A) states that a defendant has two years after the judgment of conviction and sentence has become final to file for post-conviction relief. State v. Tran, 05-518 (La.App. 5 Cir. 12/27/05), 919 So.2d 787, 795. Accordingly, we remand this case to the trial court in order for the court to inform defendant of the appropriate prescriptive period for filing for post-conviction relief by sending appropriate written notice to the defendant within ten days of the rendition of this Court's opinion and by filing written proof that the defendant received the notice in the record. Id. In all other respects, defendants' convictions and sentences are affirmed.
AFFIRMED; REMANDED.
NOTES
[1] The State also dismissed a misdemeanor possession of drug paraphernalia charge.
[2] Upon entering a plea of guilty, a defendant may be allowed appellate review, if he expressly reserves his right to appeal a specific adverse ruling. State v. Landry, 02-1242 (La. App. 5 Cir. 4/29/03), 845 So.2d 1233, 1236, writ denied, 03-1684 (La.12/19/03), 861 So.2d 556. In the present case, neither Jamon Anthony nor Jamal Anthony stated which pre-plea ruling they were appealing pursuant to State v. Crosby, supra. However, in State v. Joseph, 03-315 (La.5/16/03), 847 So.2d 1196-97, the Louisiana Supreme Court noted that, in such cases, the reviewing court could nevertheless review the trial court's evidentiary ruling on a motion to suppress:

Absent a detailed specification of which adverse pre-trial rulings the defendant reserved for appellate review as part of his guilty plea, an appellate court should presume that the trial court permitted a Crosby reservation no broader than necessary to effectuate the underlying purpose of conditional guilty pleas, i.e., to preserve review of evidentiary rulings which go to the heart of the prosecution's case that a defendant would otherwise waive by entering an unqualified guilty plea. Such rulings typically include denial of a motion to suppress evidence or a confession and exclude rulings which may affect the conduct of trial but which do not substantially relate to guilt, such as the denial of a continuance or severance.
[3] According to Detective Williams, he could see that the tag had expired on January 4, 2006.
[4] Defense counsel for Jamal Anthony and Jamon Anthony acknowledged that the brothers, who are identical twins, were in the vehicle when the police stopped the vehicle.
[5] Morris Clark was also charged in the original bill of information but is not a party to this appeal.
[6] When the officers searched the vehicle's center console, they found a foil packet with brownish powder, four syringes, and some cotton balls. Initially, Jamon Anthony was also charged with possession of heroin for the items found in the console but this charge was subsequently nolle prossed.
[7] Because we have found that the officers had sufficient reasonable suspicion to stop the defendants' vehicle based on the informant's tip and corroborating police work, we need not determine whether the police would have made an investigatory stop based on the expired license tag, pursuant to State v. Sherman, supra.