STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT
KW08-621


STATE OF LOUISIANA

VERSUS

MARTY PALMER


**********
ON WRIT APPLICATION FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES
HONORABLE ERIC R. HARRINGTON, PRESIDING
**********

SYLVIA R. COOKS
JUDGE

**********

Court composed of Sylvia R. Cooks, Elizabeth A. Pickett, Chris J. Roy, Sr.* Judges.

Pickett, J., dissents and would deny the writ.


WRIT GRANTED AND MADE PEREMPTORY.


COUNSEL FOR APPLICANT:
 Mr. Charles  Raymond  Whitehead, Jr
P.O. Box 697
Natchitoches, LA 71458-0697
(318)352-6481

COUNSEL FOR RESPONDENT:
Mr. Robert Stuart Wright
Assistant District Attorney
P.O. Box  838
Natchitoches, Louisiana 71458-0838
(318) 357-2214

_____
        *Honorable Chris J. Roy, Sr., participated in this decision by appointment
of the Louisiana Supreme Court as Judge Pro Tempore.

**COOKS, Judge**

## STATEMENT OF THE CASE

The State charged Defendant Marty Palmer with possession of Lortab, a violation of La. R.S. 40:968 (A). Defendant filed a Motion To Suppress Evidence. After a hearing on the motion, the trial court denied Defendant's Motion To Suppress. Defendant seeks relief from the denial of his motion by application for supervisory writs to this court. Defendant alleges two assignments of error arguing that he was illegally arrested and the evidence subsequently seized from his vehicle was a product of that illegal arrest and not a voluntary consent to search.

## STATEMENT OF THE FACTS

On June 6, 2007 the Natchitoches Drug Task Force of Natchitoches Police Department, after receiving three telephone calls from "concerned citizens," proceeded to a residence at 210 Shoreline Drive in Nachitoches, Louisiana. Prior to arrival, the Natchitoches police officers did not obtain any search warrant for the residence or any vehicles on or near the premises; and they did not secure any arrest warrant for any person at this location.

The State called only two witnesses to testify at hearing. One witness, Sergeant Roger Henson of the Natchitoches Drug Task Force, testified one of the "concerned citizen" callers stated about 16 vehicles had come to the residence on that day within about a 30 minute period of time, staying only for seconds at a time. The State's witness also testified prior to this date confidential informants and "concerned citizens" told the Department that they suspected methamphetamine was being distributed from this residence. The witness, however, did not provide any testimony

-1-

as to the reliability of the informants or "concerned citizens" or whether their "suspicions" were based on observations or hunches. Sergeant Henson also testified that the Police Department conducted a controlled buy of drugs at the residence in the past. However, when pressed by the trial court as to the time frame of that controlled buy, the Sergeant simply "guessed" that it was about a month earlier. The Sergeant did not disclose how he "happened upon" the information he related to the court regarding the alleged drug buy and he did not indicate that he personally witnessed or otherwise was involved in the transaction.

Describing the scene as the officers approached the residence, Sergeant Henson testified there were a number of individuals outside the residence. He told the other officers present to immediately detain everybody which included some 13 or 14 people scattered about the premises and down the street as they attempted to leave the area. Detective Glen Sers stated it was necessary to handcuff Mr. Palmer as he exited the back porch of the residence. All of the other persons were "detained" and handcuffed as well. Sergeant Henson explained this step was necessary for the officers' safety because the police were outnumbered. He related that all of the individuals, which included Defendant Palmer, were immediately patted down for weapons and none of them were free to leave.

At some point during the apprehension and detention of the individuals on or near the premises, Sergeant Henson noticed the front door to the residence was opened. The Sergeant related he knocked anyway as he "quickly" entered the residence and gained consent to search it from Crystal Swan. The record does not disclose whether Crystal Swan owned, occupied, or was a visitor at the residence. The

State's witness testified that the search of the residence produced "some stuff inside," including some marijuana and paraphernalia, and some pills on the back porch.

Although no weapon or drugs was found on Mr. Palmer during the pat down search, the Sergeant related Mr. Palmer was still "detained" in handcuffs; and, he was not free to leave because the police had not yet figured out whether there might be a "warrant or anything else on him." The Sergeant confirmed even if Mr. Palmer had asked to leave he would not have been allowed to do so. He acknowledged that none of the individuals, including Mr. Palmer, was read their Miranda rights because, according to him, no one was placed under "arrest."

The Sergeant further testified, after the search of the residence produced "some stuff inside," the police wanted to search the vehicles in the area "to make sure there was nothing additional in the vehicles." Mr. Palmer, who had been patted down for weapons, was still handcuffed when Sergeant Henson approached him and asked him to sign a consent to search form for his vehicle. The officer testified he told Mr. Palmer he did not have to sign the consent to search form and "welcomed" him to read the form. Eventually, Mr. Palmer's handcuffs were removed briefly so he could sign the consent form. Had Mr. Palmer refused to sign the consent form, the Sergeant explained, he would not have been allowed to leave and a search warrant would have been requested for his vehicle. During the search of Mr. Palmer's vehicle, the police discovered a bottle which contained approximately 58 Loritab tablets. The tablets were seized along with $466.00 from Mr. Palmer's pants pocket.

## LAW AND DISCUSSION

The Fourth Amendment to the United States Constitution and the Louisiana Constitution Article 1 Section 5 guarantee the right of citizens to be left alone and

to be free from unreasonable searches and seizures. *State v Belton*, (La. 1983) 441 So.2d 1195 , *cert. denied*, 466 U.S. 953, 104 S. Ct. 2158, (1984). The law is well established that a search conducted without a warrant is *per se* unreasonable subject to only a few specifically established exceptions, such as a search incident to a lawful arrest. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S. Ct. 2041(1973); *State v. Tomasetti*, 381 So.2d 420, (La. 1980) ; *Chimel v. Claifornia*, 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969). In Louisiana, law enforcement officers are granted authority, as provided in La. Code Crim. P. art. 215.1, to stop a citizen in a **public place** [1] for the purpose of conducting an investigatory stop based upon reasonable suspicion that the individual has committed, or is about to commit an offense. *See State v Temple*, 02-1895 (La. 9/9/03) 854 So.2d 856 ; *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, (1968); and *State v. Andrishok*, 434 So.2d 389 (La. 1983) . Mere suspicion of criminal activity is not sufficient to establish a basis for police interference with a citizen's freedom when detaining a citizen under the provisions of La. Code Crim. P. Art. 215.1. To detain a person, such as Mr. Palmer, the police officer "must have articulable knowledge of particular facts to justify the infringement on the individual's right to be free from government interference." *State v. Albert,* 553 So.2d 967, 970 (La. App. 4 Cir. 1989). *See also State v. Martinez*, 04-38 (La. App. 5 Cir. 4/27/04) 874 So.2d 272 and *State v. Coleman*, 01–112 (La. App. 4 Cir. 7/11/01) 791 So.2d 780, writ denied, 01-2257 (La. 10/12/01), 799 So.2d 1138. Our courts have determined that "reasonable suspicion" is something less than probable cause and must be determined under the facts and circumstances of each

---

[1] We have not addressed the issue raised by defendant of the applicability of Art. 215.1 to a stop on private property because our decision on other grounds makes such consideration unnecessary.

case as to whether the officer involved had sufficient facts within his knowledge to justify the investigatory stop. *State v. Sanders*, 97-892 (La. App. 5 Cir. 3/25/98) 717 So.2d 234, *writ denied* 98-1163 (La. 9/5/98) 724 So.2d 774. Additionally, the articulated facts upon which the officer relied to conduct the investigatory stop must be evaluated in light of the totality of the circumstances surrounding the incident with due deference given to the inferences and deductions of a trained police officer which might elude the untrained person. *State v. Huntley*, 97-965 (La. 3/13/98) 708 So.2d 1048. Nevertheless, the defendant's "mere presence at a residence about to be searched pursuant to a warrant or near a high crime area, without more, does not provide the police with reasonable suspicion based upon articulable facts to make an investigatory stop." *State v. Washington*, 03-1134, p.8 (La. App. 5 Cir. 2/10/04) 866 So.2d 1058, 1062.

In *State v. Cabler,* 526 So.2d 1177 (La. App. 3 Cir. 1988), the officers responded to a call by a victim who reported that he had been beaten by three "biker-type fellows" two of whom wore their hair in pony tails. Finding the officers in that case did not have reasonable suspicion to stop and frisk the defendant, this Court reasoned that the stop was based on a vague description provided by a victim. We concluded the evidence simply proved that the officers went in the direction where the victim said his attackers had fled and searched the first people they came upon who looked like biker types.

In *State v Clay*, 06-37 (La. App 5 Cir. 4/25/06) 930 So.2d 1028, our brethren on the Fifth Circuit, relying on our holding in *Cabler, 526 So.2d 1177,* found the evidence at Clay's suppression hearing did not establish reasonable suspicion for an investigatory stop. In *Clay*, an anonymous caller reported he or she heard gunfire on

the 900 block of Pailet street. The officer who arrived in the area responding to the call testified that she saw defendant Clay and another man walking in the 800 block of Pailet street in the direction from the 900 block. She and her partner stopped the two men and conducted a field interview and a pat-down frisk of both men's outer clothing for weapons. One officer said that he detected something in defendant's clothing that felt like drugs. The detective recovered a rock of cocaine from defendant Clay's pants pocket. In reversing the trial court's denial of defendant's Motion To Suppress, the Court in *Clay*, relying on this court's decision in *Cabler*, reasoned that the anonymous tip had a low degree of reliability. The caller did not report that he or she saw anyone fire a gun but only that they had heard gunshots. The caller gave no description of a perpetrator. Additionally the Court in *Clay* found, while the officer had reason to believe a crime had been committed i.e. illegal discharge of a firearm, the officer did not have reasonable suspicion that defendant Mr. Clay had committed any crime. The defendant had not exhibited any behavior that indicated he was carrying a weapon but was stopped only because he and his companion were in the area where gunfire had been reported. Even though the officer testified that she knew the area was a high crime area for drug activity such did not give the officer reasonable suspicion based upon articulable facts that defendant Clay had committed a crime.

In *State v. Sneed*, 95-2326 (La. App. 4 Cir. 9/11/96) 680 So.2d 1237, *writ denied 96-2450* 689 So.2d 1371 (La. 3/7/97) police officers acted upon information from an untested confidential informant. The informant in *Sneed* informed police that the wholesale distribution of heroin was taking place at a particular residence. There, the police actually set up surveillance of the residence that same day and observed the

defendant arrive by car, enter the house, and leave a short time later and drive away. Police followed the defendant, stopped him and performed a search of his vehicle which yielded nineteen packets of heroin. As in *Clay,* the court found that the officers in *Sneed* had acted solely on information provided by a confidential informant without verifying the information by independent investigation.

In this case, Sergeant Henson admitted in his testimony that the only new information he obtained on June 6, 2007 before going to the residence in question was derived from three "concerned citizens" who called the station and related their suspicion that drug activity was being conducted at the site. No testimony was offered on why these callers suspected drug activity at the residence except that one caller suspected drug activity was underway at the subject residence based on his or her's observations that about 16 cars had come and gone to and from the residence within half an hour. It is clear from the testimony of both officers that no surveillance of the residence had been conducted on this date. The only testimony regarding prior drug activities at the residence was provided by Sergeant Henson who related the police made a controlled buy about a month earlier at the residence. However, Sergeant Henson did not indicate how he became aware of this information.

Our courts have repeatedly held " mere suspicion of activity is not a sufficient basis for police interference with an individual's freedom." *State v. Johnson*, 557 So.2d 1030 (La. App. 4 Cir. 1990); *Coleman*, 791 So.2d 780, *writ denied* 799 So.2d 1138 (La. 2001); *State v. Williams*, 421 So.2d 874 (La.1982). The detaining officer "must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *U.S. v. Cortez*, 449 U.S. 411, 101 S. Ct. 690 (1981). Investigatory stops such as the type Mr. Palmer was subjected to, though authorized

under L. Code Crim. P. art 215.1, must be based upon facts and circumstances in each particular case which demonstrate that the officer had sufficient facts within his knowledge to justify an infringement on **that particular person's** right to be free from governmental interference. *Belton*, 441 S0.2d 1195. Such investigatory stops are only acceptable "when law enforcement officials are able to point to 'specific and articulable facts which, when taken together with rational inferences from those facts, reasonably warrant that intrusion'" *Terry v. Ohio*, 392 U.S. at 20, 88 S.Ct. at 1879. *See also Trahan v, City of Scott*,00-1246 (L. App. 3 Cir. 3/14/01) 802 So.2d 24, *writ denied 01-1008* (La. 2/1/02) 807 So.2d 855. "Law enforcement officials are not authorized to stop an individual and question them at all unless, as clearly set forth in art. 215.1, they reasonably suspect the individual 'is committing, has committed, or is about to commit an offense.' *Trahan, 802 So.2d at 27.* Here, as in *Trahan*, *Clay*, and *Sneed* , the officers (on the date in question) had nothing more than suspicion of criminal activity based upon information from unidentified "citizen" callers who had only observed cars coming and going for brief periods of time from the residence. No caller or informant identified or even described any person engaged in any criminal activity at the residence where defendant was stopped. Absolutely no evidence was presented to show that Mr. Palmer was committing, had committed or was about to commit some criminal offense. Mr. Palmer was merely seen walking out of a residence in which unknown citizens suspected drug activity.

Moreover, our state supreme court, in *State v. Porche*, 943 So.2d 335 (La. 2006) following a holding of the United States Supreme Court, reiterated that "[t]here is no question that the use of handcuffs, being one of the most recognizable indicia of traditional arrest, substantially aggravates the intrusiveness of a putative

*Terry* stop. Thus, because the police conducting an investigatory stop 'may not seek to verify their suspicions by means that approach the conditions of arrest, *Florida v. Royer*, 460 U.S. 491, 499, 103 S. Ct. 1319, 1325, 75 L. Ed. 2d 229 (1983) the use of handcuffs must appear objectively reasonable in light of the facts and circumstances confronting the police....". *United States v. Acosta-Colon*, 157 F.3d 9, 18-19 (1st Cir. 1998), cited approvingly in *Porche*. The supreme court also noted in *Porche* "when the government seeks to prove that an investigatory detention involving the use of handcuffs did not exceed the limits of a *Terry* stop, it must be able to point to some specific fact or circumstance that could have supported a reasonable belief that the use of such restraints was necessary to carry out the legitimate purpose of the stop without exposing law enforcement officers, the public, or the suspect himself to an undue risk of harm". *Porche, 943 So.2d* at 339. The only fact or circumstance that was articulated in this case as the reason for immediately handcuffing and frisking defendant Palmer and others was that the police were outnumbered and had concern for their safety. The states' witness did not testify as to how many officers were present but we discern from his testimony that units from the Sheriff's office, Criminal Division and the Drug Task Force, and the Natchitoches Police Department were all present at the scene. The mere reality that "[d]rugs and guns and violence often go together, and thus this might be a factor tending to support an officer's claim of reasonableness," *United States v. Melendez-Garcia,* 28 F. 3d l046, 1052 (10th Cir. 1994) to use handcuffs as a restraint, in this case the State witnesses did not articulate any particularized reason for believing defendant Palmer was armed or violent. "In the absence of such particularized concerns, ordinarily 'the naked fact that drugs are suspected will not support a per se justification for use of guns and handcuffs in a

-9-

*Terry* stop' *Melendez-Garcia*, 28 F.3d at 1053." *Porche,* 943 So.2d at 340. Further, the supreme court held in *Porche*, if the added intrusion is unwarranted in the particular circumstances of a given case, the putative *Terry* stop may escalate into a *de facto* arrest requiring probable cause to render it valid". *Porche,* 943 So.2d at 340, citing *Melindez-Garcia*, 28 F.3d 1046. Even if the "safety"of the officers suffices as a legitimate basis for initially stopping defendant and conducting a pat down of his person for weapons, we are satisfied the continued detention and handcuffing of defendant by the officers far exceeded the permissible limits of an investigatory stop or detention for this purpose. The only other reason articulated by the officers for continuing to hold Mr. Palmer was the police wanted to see if there was "any outstanding warrant or anything else on him." The Sergeant admitted he often handcuffs people "*on the basis of speculation*" so that he can then find out whether there are any outstanding warrant "or anything else on" them.

The testimony in this case establishes that Mr. Palmer's continued detention was based on nothing more than suspicion with the articulated intent of the police to hold him and restrict his freedom until they could determine whether there was any warrant for his arrest outstanding or whether they could somehow connect him to any illegal activity after searching his car. According to the state's witnesses, Mr. Palmer did not try to run from the police nor was he uncooperative when the police handcuffed him along with 13 or 14 others found at or near the residence of suspected drug activity. Mr. Palmer was not given any opportunity to explain his presence at this residence before being handcuffed and frisked; and, no weapons or drugs were discovered on his person.

The police asserted at the Motion To Suppress that Mr. Palmer freely and voluntarily agreed to a search of his vehicle. The testimony of the officers belie this assertion. The officer admitted that Mr. Palmer would not have been free to leave had he refused to allow a search of his vehicle and at the time his consent was requested he was still handcuffed.

Accordingly, we find Defendant's consent to the search of his vehicle was tainted by the illegal conduct of the police in handcuffing and continuing to detain him without probable cause. The state retained the burden at the motion of proving that the evidence seized, without a warrant, was obtained through lawful means. La. Code Crim. P. art. 703(D). This burden it failed to carry.

**DECREE**

The Writ is hereby granted and made peremptory. The ruling of the trial court is reversed. The Motion To Suppress the evidence filed by Defendant is granted; and the case is remanded for further proceeding.