# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## KA 11-9


**STATE OF LOUISIANA**

**VERSUS**

**PRESTON KINCHEN**
**AKA STEVEN HALL**
**AKA STEVEN WEBB**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. CR124874.1
HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**BILLY HOWARD EZELL**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***


Court composed of Elizabeth A. Pickett, Billy Howard Ezell, and Phyllis M. Keaty, Judges.



**AFFIRMED.**



**Michael Harson**
**District Attorney, Fifteenth Judicial District Court**
**P.O. Box 3306**
**Lafayette, LA 70502-3306**
**(337) 232-5170**
**State of Louisiana**

**James Nathan Prather, Jr.**
**P. O. Box 3993**
**Lafayette, LA 70502**
**(337) 237-0047**
**Counsel for Plaintiff/Appellee:**
**State of Louisiana**

**Mark Owen Foster**
**Louisiana Appellate Project**
**P. O. Box 2057**
**Natchitoches, LA 71457**
**(318) 572-5693**
**Counsel for Defendant/Appellant:**
**Preston Kinchen**

___

**EZELL, JUDGE.**

On October 1, 2009, Defendant, Preston Kinchen, AKA Steven Hall, AKA Steven Webb, was charged by bill of information with one count of armed robbery, a violation of La.R.S. 14:64, and one count of possession of a firearm by a convicted felon, a violation of La.R.S. 14:95.1. On August 16, 2010, Defendant pled guilty to possession of a firearm by a convicted felon.

According to the plea form executed by Defendant and referred to by the trial court, the State dismissed count one. Defendant reserved his right to appeal the denial of his motion to suppress, and the State reserved its right to pursue count one if the appeal was granted. He was sentenced to serve ten years at hard labor with credit for time served, and the sentence was to be served concurrently with any other sentence. The sentence was to be served without benefit of parole, probation, or suspension of sentence.

On August 23, 2010, Defendant filed a motion for appeal and designation of the record, which was granted on August 24, 2010. For the following reasons, Defendant's conviction and sentence are affirmed.

**FACTS**

A hearing was conducted on July 22, 2010, on the motion to suppress filed by Defendant. The only witness called to testify was Trooper Leon Defelice of the Louisiana State Police.

Trooper Defelice testified that on July 16, 2009, he was working criminal patrol at mile post 108, on Interstate 10 (I-10) in St. Martin Parish. He was observing eastbound traffic when he noticed a vehicle traveling unusually slow, which caused other traffic to move from the left lane to the right lane in order to pass, creating a hazardous situation.

1

The trooper performed a stop and made contact with a driver licensed as Preston Kinchen. He advised the driver, identified as the Defendant, he was being stopped for going too slow in the left-hand lane. The posted speed was seventy miles per hour, and he confirmed that the Defendant was traveling at fifty-seven miles per hour. The Defendant advised him that he and the passenger, Charles Smith, were coming back from looking for a job west of their location.

The Defendant was not specific about where they had been, stating only "around the Lake Charles area." When the trooper pursued questioning, the Defendant advised that they were looking for oilfield work but never stopped and just rode down I-10, turning around in Lake Charles and coming back eastbound. The trooper testified that the location of the stop was approximately forty-five minutes to an hour from Lake Charles, depending on speed.

The vehicle driven by Defendant was determined to be a rental vehicle. When Trooper Defelice questioned Defendant further, asking if they had stopped anywhere, he was told "no" and that they were just riding down the interstate looking for oilfield jobs. The Trooper stated that these answers aroused his suspicion.

Trooper Defelice testified that he next spoke with the passenger, Charlie Smith, who was still seated in the vehicle. When Trooper Defelice asked Smith where they were coming from, he stated, "wherever he said we're coming from." It appeared that he did not want to commit to an answer. Trooper Defelice said this was not a normal response. He said that Smith did not want to engage in any conversation.

Trooper Defelice testified that he was suspicious that something criminal might be going on, and he ran both the Defendant's and passenger's criminal histories, finding out both had histories of armed robberies. He prepared a consent for search form and called for backup. He told the Defendant that he was requesting permission

2

to search the vehicle. The Defendant said that he did not know why the Trooper wanted to search the vehicle and then exercised his right to refuse to sign the consent form. Trooper Defelice then called for the K-9 unit which was only minutes away.

When the K-9 unit arrived, the dog sniffed the vehicle and the dog handler advised that the dog had alerted. As a result of the alert, Trooper Defelice searched the vehicle, first finding a female wig, which he found strange as no woman was in the vehicle. However, there was a woman named on the rental agreement. When he opened the center console, he found a Beretta 40 caliber gun sitting on top of two latex gloves with two rolls of change.

At this time he became concerned that, given their criminal histories, there might have been some type of armed robbery somewhere near their location. He radioed the troop and requested them to check on any reports of armed robberies in the area. He also had the gun run to determine if it was stolen. Since both occupants of the vehicle had felony convictions, both were arrested for possession of a firearm by a convicted felon. He also determined that the gun had been reported stolen from William Burch of Baton Rouge.

As they were transporting the Defendant and passenger, while only a mile down the highway, the troop advised him that there had been an armed robbery in Lafayette, only twenty minutes prior to his stop. He was given a description of the suspects that was similar to the two men in custody. The investigation was turned over to the Lafayette Police Department.

On cross-examination, Trooper Defelice was asked about the stop and said the vehicle he observed was "obstructing traffic basically." He testified that it was within his discretion to issue a warning or a ticket and at the time of the stop, he intended to issue a warning. He stated that the non-specific answers by the Defendant, the non-

cooperation of the passenger, their criminal histories, and their presence in a vehicle rented by someone else and being driven from Baton Rouge to Lake Charles to look for a job, raised a red flag and made him suspicious.

Trooper Defelice testified that it was probably within five minutes of calling for the drug dog that it arrived at his location. During those five minutes, he had the Defendant stand in front of his unit. He was not free to go at that point, due to the Trooper Defelice's suspicions.

**ERRORS PATENT**

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there are two errors.

The trial court failed to impose a mandatory fine for the Defendant's conviction of possession of a firearm by a convicted felon. In addition to imprisonment, La.R.S. 14:95.1 requires the imposition of a fine of not less than one thousand dollars nor more than five thousand dollars. The trial court's failure to impose a mandatory fine renders the Defendant's sentence illegally lenient. We will not recognize an illegally lenient sentence claim unless it is raised as error. *State v. Jacobs*, 08-1068 (La.App. 3 Cir. 3/4/09), 6 So.3d 315, *writ denied*, 09-755 (La. 12/18/09), 23 So.3d 931.

Next, the trial court failed to orally pronounce sentence. Louisiana Code of Criminal Procedure Article 871(A) provides: "A sentence is the penalty imposed by the court on a defendant upon a plea of guilty, upon a verdict of guilty, or upon a judgment of guilt. Sentence shall be pronounced orally in open court and recorded in the minutes of the court."

4

Louisiana Code of Criminal Procedure Article 879 provides: "If a defendant who has been convicted of an offense is sentenced to imprisonment, the court shall impose a determinate sentence."

The minutes of sentencing reflect, in pertinent part:

THE COURT SENTENCED THE DEFENDANT IN ACCORDANCE WITH THE PLEA AGREEMENT CONTAINED ON THE PLEA FORM, WHICH WAS SIGNED BY THE DEFENDANT, A COPY OF THE SAME WAS RECEIVED BY THE DEFENDANT AND THE ORIGINAL WAS FILED INTO THE RECORD, THAT BEING: 10 YEAR HARD LABOR, CREDIT FOR TIME SERVED, CONCURRENT WITH ANY OTHER SENTENCE SERVING, WITHOUT THE BENEFIT OF PAROLE, PROBATION OR SUPSENSION [SIC] OF SENTENCE.

The trial judge, while speaking to several defendants at once, including Mr. Kinchen, had the following pertinent exchange:

THE COURT:

> Do each of you wish to receive your sentence today and waive whatever delays you might be entitled to?
>
> . . . .

MR. KINCHEN:

> Yes, sir.
>
> . . . .

THE COURT:

> . . . .[H]aving said that your attorney negotiated for you and on your behalf a sentence you expect to received. That sentence is pronounced at the bottom of the plea form. Each of you have a copy of the plea form. Is that right?
>
> . . . .

MR. KINCHEN:

> Yes, sir.

Q. [THE COURT]:

Each of you are well acquainted with the sentence you expect to receive because it's at the bottom of your plea form.

On the guilty plea form, under the section of "PLEA RECOMMENDATION (Marked)," was set forth ten years hard labor, concurrent, without benefit of parole, probation, or suspension of sentence.

In *State v. Jones,* 517 So.2d 402, 406 (La.App. 5 Cir. 1987), *writ denied*, 522 So.2d 560 (La.1988), the court explained: "The purpose of requiring the defendant's presence at sentencing and of pronouncing the sentence in open court is to insure the defendant is apprised of the punishment imposed, See C.Cr.P. arts. 835, 871 and comments thereunder."

In *State v. Portalis*, an unpublished appeal bearing docket 99-1807 (La.App. 3 Cir. 5/3/00), on errors patent review, this court recognized two errors, one of which was the trial court's failure to orally pronounce sentence in accordance with La.Code Crim.P. art. 871. In open court, the trial court stated the defendant was sentenced "in accordance with the plea agreement." This court held, in pertinent part:

> Initially, we observe that the requirements of Article 871 and 556.1 are statutory requirements rather than constitutional requirements. There is no indication in the *Boykin* analysis to indicate that Defendant's plea was not voluntary or that he was unaware of the terms of the plea agreement or the nature of the charges against him. Defendant acknowledged that he signed the plea agreement and that he understood that by pleading guilty he could not appeal his sentence. We find the trial court's failure to pronounce Defendant's sentence orally in open court and to inform him that this sentence could be with or without hard labor to be harmless error.

*Id.* at 2.

In this case, the guilty plea form set forth the sentence imposed. This guilty plea form was signed by the Defendant, the Defendant's attorney, and the trial court judge. Additionally, at the guilty plea proceeding, the trial court advised the Defendant of the possible penalty and asked the Defendant if he understood. The

6

Defendant responded affirmatively. Furthermore, the Defendant acknowledged he had a copy of the plea form. Moreover, on appeal, the Defendant does not complain he was not appraised of the sentence that was imposed. Therefore, in this particular case, we find the error is harmless.

**ASSIGNMENT OF ERROR**

Defendant argues that the trial court erred in failing to find that the investigatory stop was an unlawful detention and the trial court erred in denying his motion to suppress. This court discussed the standard applicable for reviewing motions to suppress as follows:

> The appellate court looks at the totality of the evidence presented at the hearing for the motion to suppress when reviewing a trial court's denial of the motion. *State v. Sherman*, 03-1198 (La.App. 3 Cir. 3/2/05), 896 So.2d 1194. The appellate court should overturn the trial court's conclusions only if they are not supported by the evidence or there is a clear abuse of discretion. *State v. Purvis*, 96-787 (La.App. 3 Cir. 12/11/96), 684 So.2d 567. "In other words, the appellate court will give the trial court's determination great weight and will not set aside the trial court's ruling unless clearly mandated by a preponderance of the evidence." *Sherman*, 896 So.2d at 1202.

*State v. Moreau*, 05-544, pp. 3-4 (La.App. 3 Cir. 12/30/05), 918 So.2d 598, 601.

Louisiana Code of Criminal Procedure Article 215.1(A) allows an officer to "stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense." Whether an officer has sufficient facts within his knowledge to justify an investigatory stop determines whether reasonable suspicion exists. *State v. Palmer*, 08-621 (La.App. 3 Cir. 12/10/08), 1 So.3d 689, *reversed on other grounds*, 09-44 (La. 7/1/09), 14 So.3d 304.

Here, the officer reasonably and correctly suspected an offense had occurred when he observed Defendant's vehicle driving in such a manner as to impede traffic, traveling in the inside lane of the highway. Louisiana Revised Statutes 32:73.1 states:

7

A. For purposes of this Section, the term "multiple-lane highway" shall have the meaning provided in R.S. 32:1(42), but shall only include a multiple-lane highway outside the city limits with a posted speed limit of fifty-five miles per hour or more.

B. A vehicle which remains in the passing lane of a multiple-lane highway as defined in Subsection A of this Section traveling at the same speed as the vehicle in the right lane and impedes the flow of traffic shall be deemed a "rolling roadblock" which shall be prohibited. The provisions of this Subsection shall not apply to vehicles stopped at a traffic signal or traveling at a slower rate due to traffic congestion as long as the vehicle is not causing traffic congestion.

C. Violations of this Section shall be punishable as provided in R.S. 32:57.

Defendant states that the Trooper's initial stated intention was to only issue a warning to him and that this should have only taken "a few minutes at most." He argues that detention was not necessary for such a warning, and "he must have an objectively reasonable suspicion that some sort of illegal activity occurred or was about to occur" for the stop to be justified. He further argues that the Trooper only had a subjective belief to support a reasonable suspicion.

Trooper Defelice stated that his suspicion was based on the facts that:

1. the Defendant would not be specific about where they had been, stating only "around the Lake Charles area;"

2. the Defendant advised that they were looking for oilfield work, but never stopped, and just rode down I-10, turning around in Lake Charles and coming back eastbound;

3. the vehicle driven by Defendant was determined to be a rental vehicle;

4. the passenger would not commit to stating where they had been, stating only, referring to Defendant, "wherever he said we were coming from;

5. the passenger refused to engage in conversation, which was highly unusual;

6. both the Defendant and passenger had a criminal history of armed robberies; and

8

7. the drug dog, which arrived within minutes of being called for, alerted on the vehicle.

The Fourth Amendment to the U.S. Constitution guarantees Defendant's right to be secure in his person and property against unreasonable searches. However, "an individual's expectation of privacy in a vehicle and its contents may not survive if probable cause is given to believe that the vehicle is transporting contraband." *United States v. Ross*, 456 U.S. 798, 823, 102 S.Ct. 2157, 2172 (1982). "The totality of the circumstances, 'the whole picture,' must be considered in determining whether reasonable cause exists." *State v. Belton*, 441 So.2d 1195, 1198 (La.1983), *cert. denied*, 466 U.S. 953, 104 S.Ct. 2158 (1984) (citing *United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690 (1981)).

A form of seizure which does not require a warrant or probable cause is an investigatory stop made pursuant to La.Code of Crim.P. art. 215.1(A). *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The right to make an investigatory stop and question the individual detained must be based upon reasonable cause or reasonable suspicion to believe that the person has been, is, or is about to be engaged in criminal conduct. La.Code Crim.P. art. 215.1(A) and *State v. Belton*, 441 So.2d 1195 (La.1983), *cert. denied,* 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). In determining whether or not reasonable cause exists to temporarily detain a person, the totality of the circumstances, "the whole picture," must be considered. *Belton*, 441 So.2d 1195, and *State v. Hall*, 581 So.2d 337 (La.App. 3 Cir. 1991).

A generalized suspicion or "hunch" that an individual is involved in criminal conduct is not sufficient to detain the individual or his automobile. A police officer must have a particularized suspicion based upon articulable facts. *See State v. Thibodeaux*, 531 So.2d 284 (La.App. 3 Cir.1987); *State v. Thompson*, 543 So.2d 1077 (La.App. 2 Cir.), *writ denied*, 551 So.2d 1335 (La.1989); and *State v. Bunnell*, 517 So.2d 439 (La.App. 1 Cir.1987). If the police officer has a specific suspicion of criminal activity, he may further detain the individual while he diligently pursues a means of investigation likely to quickly confirm or dispel the particular suspicion. *U.S. v. Sharpe*, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985).

*State v. Livings*, 95-251, p. 4 (La.App. 3 Cir. 11/15/95), 664 So.2d 729, 732-33, *writ denied*, 95-2906 (La. 2/28/96), 668 So.2d 367.

Defendant states in brief, citing supporting jurisprudence, that: "Extreme nervousness or agitation, coupled with conflicting stories at [sic] to travel destinations, are very common factors giving rise to reasonable suspicion to support an officer's decision to pursue further investigation." He does not point to any case saying that all of these factors are mandated.

We find that the story given by Defendant that he and Smith were looking for work in the oilfield, but they simply rode down the interstate without stopping anywhere, turning around in Lake Charles to return, is by itself suspicious. This, coupled with his passenger's refusal to commit to where they had been, while basically saying, wherever the Defendant said we have been, compounded that suspicious behavior.

Defendant concedes that the actions of the drug dog do not constitute a search, but argues that the State failed to show that the Trooper had probable cause to go into the car. The Louisiana Supreme Court stated in *State v. Lopez*, 00-562, p. 4 (La. 10/30/00), 772 So.2d 90, 93:

> The arrival of a drug-detection dog on the scene within minutes of the stop afforded the officer the opportunity to "pursue[ ] a means of investigation that was likely to confirm or dispel [his] suspicions quickly, during which time it was necessary to detain the defendant." *United States v. Sharpe*, 470 U.S. 675, 686, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985). The dog's sniffing around the exterior of the vehicle did not itself constitute a search, *United States v. Place*, 462 U.S. 696, 707, 103 S.Ct. 2637, 2644-45, 77 L.Ed.2d 110 (1983), and its subsequent alert, consistent with respondent's extreme nervousness, gave the officers probable cause to search for contraband. *United States v. Seals*, 987 F.2d 1102, 1106-07 (5th Cir.1993).

Defendant argues that the testimony of Trooper Defelice was only that the canine officer told him that the dog alerted, but the State did not produce that officer to testify as to the specifics of the alert. While he cites to cases giving examples of more detailed testimony as to the specifics of how a dog alerts, he cites no

10

jurisprudence requiring more than the testimony as to the alert. This argument begs one to ignore that the Defendant, if he thought this proof was less than accurate, had the right to subpoena and examine the canine officer to refute the prior testimony.

Giving the trial court's ruling "great weight," a reversal is not mandated by a preponderance of the evidence. *See Sherman*, 896 So.2d at 1202.

## CONCLUSION

Defendant's conviction and sentence are affirmed.

**AFFIRMED**.