# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 21-745

**STATE OF LOUISIANA**

**VERSUS**

**GEORGE JOSEPH**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 25145-19
HONORABLE DAVID A. RITCHIE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**SHANNON J. GREMILLION**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Shannon J. Gremillion, Candyce G. Perret, and Sharon Darville Wilson, Judges.

**CONVICTION AFFIRMED;**
**SENTENCE VACATED AND REMANDED FOR RESENTENCING.**

**Edward K. Bauman**
**Louisiana Appellate Project**
**P. O. Box 1641**
**Lake Charles, LA 70602-1641**
**(337) 491-0570**
**COUNSEL FOR DEFENDANT/APPELLANT:**
**George Joseph**

**Stephen C. Dwight**
**Fourteenth Judicial District Court Attorney**
**Karen C. McLellan**
**Assistant District Attorney**
**P. O. Box 3206**
**901 Lakeshore Drive, Suite 800**
**Lake Charles, LA 70601**
**(337) 437-3400**
**COUNSEL FOR APPELLEE:**
**State of Louisiana**

**GREMILLION, Judge.**

Defendant, George Joseph, was charged by an amended bill of information with fourth offense operating a motor vehicle while intoxicated (DWI) in violation of La.R.S. 14:98.4. After initially entering a plea of not guilty, on May 3, 2021, Defendant filed a motion to quash alleging that the documents from his prior May 12, 2011 guilty plea did not show he was properly advised of his rights. After a hearing held that day, the trial court denied Defendant's motion and subsequently accepted Defendant's plea to fourth offense DWI pursuant to *State v. Crosby*, 338 So.2d 584 (La.1976). On July 21, 2021, Defendant was sentenced to serve thirty years with the Department of Corrections, with two years to be without the benefit of probation, parole, or suspension of sentence. Upon release, Defendant is to be placed on supervised probation for five years subject to the conditions set forth in La.Code Crim.P. arts. 895 and 895.1, as well as certain special conditions. Defendant appeals his conviction and sentence. For the following reasons, Defendant's conviction is affirmed, his sentence is vacated, and the case remanded for resentencing.

## FACTUAL BACKGROUND

In October 2019, Calcasieu Parish Sheriff's officers witnessed a gray vehicle commit multiple traffic violations. Upon stopping the vehicle, they noticed the driver, Defendant, exhibited physical signs of impairment. He admitted to drinking before driving, and he was unable to complete the standardized field sobriety test(s) due to possible health issues and safety concerns. Defendant refused to submit to a breathalyzer test. A subsequent blood test revealed Defendant's blood alcohol content was above the legal limit. Defendant was previously convicted in the Thirteenth Judicial District Court on May 12, 2011, of DWI, second offense; in the

Fourteenth Judicial District Court on May 16, 2014, of DWI third offense; and in the Thirty-third Judicial District Court on August 31, 2017, of DWI, fourth offense.

### ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we note several errors patent raised by the State. First, the State claims that the court did not orally impose Defendant's sentence as required by La.Code Crim.P. art. 871. Next, it contends that Defendant's sentence is indeterminate because the transcript does not indicate whether his sentence was imposed with or without hard labor. Finally, the State notes that the mandatory $5,000.00 fine required by La.R.S. 14:98.4 was not imposed.

We find the trial court's failure to orally impose Defendant's sentence requires remand for resentencing, rendering the remaining issues raised by the State moot.

At sentencing, the parties stated:

**MR. ALGERO:**

> As it applies to Mr. Joseph, I believe the recommended sentence is going to be that he [be] sentenced to thirty years in the Department of Corrections, ten of those years to be suspended, and be placed on five years of supervised probation upon release from custody, that time to run concurrent to his current DOC time. I believe that's going to have to be under Article 890.1 because he is pleading - - did plead to a second 4th offense, which would require to be consecutive, but under 890.1 we're going to ask that it be run concurrently to the ten years he's serving obviously without benefit, Judge - - or the eight years he's currently serving. I guess it was ten, two without benefit, and he was released on probation.
>
> . . . .
>
> So he has eight left. The conditions of probation upon release are as follows:
>
> General conditions of Articles 895 and 895.1;
>
> Pay a fine of $5,000, plus court costs payable over probation;

2

Upon release from incarceration undergo an evaluation by the Department of Health and Hospitals, Office of Behavioral Health to determine the nature and extent of any substance abuse disorder;

Participate in any treatment plan recommended by the Office of Behavioral Health, including treatment in an in-patient facility approved by the office for a period of not less than four weeks followed by out-patient treatment services for a period not to exceed twelve months.

Upon his release he is to be sentenced to home incarceration for five years with electronic monitoring, curfew restrictions, and monthly home visitation by the Office of Probation and Parole.

To perform forty 8-hours days of court-approved community services activities.

To pay monthly fees of $71 to the Office of Probation and Parole for the period of probation.

To not operate any vehicle without an ignition interlock device during the probation period.

To obtain and maintain gainful employment.

To attend five victim impact sessions during the probationary period at a rate of one victim impact panel per year.

Attend one AA/NA meeting per week during the probationary period.

Undergo a driver improvement program approved by the Office of Probation and Parole.

Submit to random drug screens at the discretion of the probation officer.

Pay a one-time fee of $250 to the Traumatic Head Injury Fund pursuant to Louisiana Revised Statute 46:2633 payable over the period of probation.

**MS. TRAUB:**

Your Honor, I just want to put on the record that myself, Mr. Algero, and Your Honor had a brief conversation regarding this matter at the bench. I just want to put on the record that Your Honor was able to look at the medical diagnosis from 2020 regarding Mr. Joseph and, Your Honor, for reasons discussed at the bench I've spoken with my client regarding this, at this time that would be a joint recommendation.

The trial court stated, "I'm going to go along with that and I'm going to accept that recommendation, but I just want you to know that . . . ." The trial court later stated, "[e]very drunk driver thinks they drive better drunk than everybody else until they kill somebody and so just make sure you follow all those conditions." The trial court was then asked to clarify the "without benefit" portion of the sentence:

THE CLERK:

>Judge, can you clarify the without benefit portion of it? Is it without benefit, the ten years, or - -

THE COURT:

>No, the twenty years - -

MR. ALGERO:

>The twenty years is without benefit of probation, parole, or suspension.

MS. TRAUB:

>No, no.

MR. ALGERO:

>There are two that are mandatory without benefit. Yes ma'am.

THE COURT:

>All right. Well, look, y'all have - - let's see. And I will give you credit for any time you've served on the charge from the date of your arrest and it will be concurrent from that date with any other time you're serving and I'll recommend that you be allowed to participate in any substance abuse programs that are available while you're serving your time prior to your release, Mr. Joseph, because I - - it is so important that you get some treatment while you're in there so that when you get out that there's no chance that this could happen again, you know, because I just want to avoid you going back.

The plea form reflects the minimum and maximum penalties and fines, but it does not reflect the recommended sentence.

4

In *State v. Johnson*, 19-201, pp. 5-6 (La.App. 3 Cir. 12/4/19), 286 So.3d 493, 497-98, this court found reversible error occurred when the trial court failed to orally pronounce sentence:

> We find the trial court's statement that it was going to "rule the same" was not sufficient to impose a sentence on Defendant.
>
> Louisiana Code of Criminal Procedure Article 871 provides, in pertinent part, as follows: "A sentence is the penalty imposed by the court on a defendant upon a plea of guilty, upon a verdict of guilty, or upon a judgment of guilt." In the early case of *State v. Burks*, 202 La. 167, 172, 11 So.2d 518, 519-20 (1942), prior to the enactment of our Louisiana Code of Criminal Procedure, "sentence" as used in criminal law was defined as "the pronouncement by the judge of the penalty or punishment as the consequence to the defendant of the fact of his guilt."
>
> In *State v. Jones*, 517 So.2d 402, 406 (La.App. 5 Cir. 1987), *writ denied*, 522 So.2d 560 (La.1988), overruled on other grounds *by State v. Monk*, 532 So.2d 1143 (La.1988), the court explained, "The purpose of requiring the defendant's presence at sentencing and of pronouncing the sentence in open court is to insure the defendant is apprised of the punishment imposed, See C.Cr.P. arts. 835, 871 and comments thereunder." *See also State v. Kinchen*, 11-9 (La.App. 3 Cir. 6/8/11), 71 So.3d 344.
>
> In *State v. Young*, 18-858 (La.App. 3 Cir. 5/15/19), 271 So.3d 422, a case with a similar sentencing issue, this court reviewed a scenario where the trial court neither orally stated for the record its reasons for sentence nor the actual sentence; rather, it merely referenced the written sentencing document. As a result, this court vacated defendant's sentence, and on remand, instructed the trial court to pronounce defendant's sentence orally in open court and record it in the court minutes as La.Code Crim.P. art. 871 required.
>
> Here, the trial court did not pronounce Defendant's sentence in open court; rather, it merely referred to *Miller* [*v. Alabama*, 567 U.S. 460, 132 S.Ct. 2455 (2012)], *Montgomery* [*v. Louisiana*, 577 U.S. 190, 136 S.Ct. 718 (2016)], and *Blakely* [*v. Washington*, 542 U.S. 296, 124 S.Ct. 2531 (2004)], and simply stated without specificity to Defendant's conviction, "considering the sentencing range without an investigation that life imprisonment with the benefit of parole or probation after 25 years is warranted. As a result, this Court is going to rule the same." We find that this was insufficient to comply with our law as the sentencing colloquy did nothing to ensure Defendant was apprised of the particular punishment imposed. Accordingly, we vacate Defendant's sentence, and on remand, the trial court is instructed that Defendant's particularized sentence must be pronounced orally in open court and recorded in the court minutes as required by La.Code Crim.P. art. 871.

In *State v. Kinchen*, 11-9 (La.App. 3 Cir. 6/8/11), 71 So.3d 344, this court addressed the failure to orally impose sentence as an error patent, not a raised issue as in this case. Ultimately finding the error harmless, this court reasoned:

> Next, the trial court failed to orally pronounce sentence. Louisiana Code of Criminal Procedure Article 871(A) provides: "A sentence is the penalty imposed by the court on a defendant upon a plea of guilty, upon a verdict of guilty, or upon a judgment of guilt. Sentence shall be pronounced orally in open court and recorded in the minutes of the court."

> Louisiana Code of Criminal Procedure Article 879 provides: "If a defendant who has been convicted of an offense is sentenced to imprisonment, the court shall impose a determinate sentence."

> The minutes of sentencing reflect, in pertinent part:

> THE COURT SENTENCED THE DEFENDANT IN ACCORDANCE WITH THE PLEA AGREEMENT CONTAINED ON THE PLEA FORM, WHICH WAS SIGNED BY THE DEFENDANT, A COPY OF THE SAME WAS RECEIVED BY THE DEFENDANT AND THE ORIGINAL WAS FILED INTO THE RECORD, THAT BEING: 10 YEAR HARD LABOR, CREDIT FOR TIME SERVED, CONCURRENT WITH ANY OTHER SENTENCE SERVING, WITHOUT THE BENEFIT OF PAROLE, PROBATION OR SUSPENSION [SIC] OF SENTENCE.

> The trial judge, while speaking to several defendants at once, including Mr. Kinchen, had the following pertinent exchange:

> *THE COURT:*

> Do each of you wish to receive your sentence today and waive whatever delays you might be entitled to?
> . . . .

> *MR. KINCHEN*:

> Yes, sir.
> . . . .

> *THE COURT:*

> . . . . [H]aving said that your attorney negotiated for you and on your behalf a sentence you expect to received. That sentence is pronounced at the bottom of the plea form. Each of you have a copy of the plea form. Is that right?

. . . .

*MR. KINCHEN:*

Yes, sir.

Q. [THE COURT]:

Each of you are well acquainted with the sentence you expect to receive because it's at the bottom of your plea form.

On the guilty plea form, under the section of "PLEA RECOMMENDATION (Marked)," was set forth ten years hard labor, concurrent, without benefit of parole, probation, or suspension of sentence.

In *State v. Jones*, 517 So.2d 402, 406 (La.App. 5 Cir.1987), *writ denied*, 522 So.2d 560 (La.1988), the court explained: "The purpose of requiring the defendant's presence at sentencing and of pronouncing the sentence in open court is to insure the defendant is apprised of the punishment imposed, See C.Cr.P. arts. 835, 871 and comments thereunder."

In *State v. Portalis*, an unpublished appeal bearing docket 99-1807 (La.App. 3 Cir. 5/3/00), 775 So.2d 710, on errors patent review, this court recognized two errors, one of which was the trial court's failure to orally pronounce sentence in accordance with La.Code Crim.P. art. 871. In open court, the trial court stated the defendant was sentenced "in accordance with the plea agreement." This court held, in pertinent part:

Initially, we observe that the requirements of Article 871 and 556.1 are statutory requirements rather than constitutional requirements. There is no indication in the *Boykin* analysis to indicate that Defendant's plea was not voluntary or that he was unaware of the terms of the plea agreement or the nature of the charges against him. Defendant acknowledged that he signed the plea agreement and that he understood that by pleading guilty he could not appeal his sentence. We find the trial court's failure to pronounce Defendant's sentence orally in open court and to inform him that this sentence could be with or without hard labor to be harmless error.

*Id*. at 2.

In this case, the guilty plea form set forth the sentence imposed. This guilty plea form was signed by the Defendant, the Defendant's attorney, and the trial court judge. Additionally, at the guilty plea proceeding, the trial court advised the Defendant of the possible penalty

and asked the Defendant if he understood. The Defendant responded affirmatively. Furthermore, the Defendant acknowledged he had a copy of the plea form. Moreover, on appeal, the Defendant does not complain he was not appraised of the sentence that was imposed. Therefore, in this particular case, we find the error is harmless.

*Id.* at 348-49.

In the present case, after Defendant entered his guilty plea, a pre-sentence investigation (PSI) was ordered by the court and sentencing was set. At the sentencing proceeding, the prosecutor presented a recommendation that he and defense counsel had discussed that the court indicated that it was going to accept.[1] Unlike *Kinchen*, there was no negotiated sentence set forth on the plea form signed by Defendant. Additionally, unlike *Kinchen*, there is a complaint on appeal, albeit by the State rather than Defendant. Under the circumstances presented in this case, we vacate Defendant's sentence and remand the case for resentencing, at which the sentence shall be orally pronounced as required by La.Code Crim.P. art. 871.

## ASSIGNMENT OF ERROR NUMBER ONE

Defendant contends that the trial court erred in denying his motion to quash because the transcript of the May 12, 2011 DWI second offense conviction is not a true nor certified copy. The certified minute entry introduced by the State shows only that Defendant was advised of his rights and that he acknowledged that he understood them. According to Defendant, there was no "certified" transcript proving a proper Boykinization. Even considering the transcript that was introduced, Defendant notes there is no indication that he was informed of the minimum and maximum penalty or that the conviction could be used for enhancement purposes as required by La.Code Crim.P. art. 556.

---

[1]At the beginning of the sentencing proceeding, the prosecutor informed the court that they had worked out an "agreed-upon" sentence, but there is no indication on the plea form or in the guilty plea transcript that this was done as part of a plea agreement.

8

In *State v. Balsano*, 09-735 (La. 6/19/09), 11 So.3d 475, the defendant was charged with fourth offense DWI with the three prior convictions being obtained in a single plea proceeding. The defendant filed a motion to quash the use of the prior guilty pleas due to the fact the transcript of the prior colloquy revealed the trial court failed to advise him of his privilege against self-incrimination. The trial court denied the motion, finding that the totality of the circumstances showed the defendant had been afforded all the constitutional protections required under the laws of both Tennessee, but more importantly, Louisiana. The appellate court reversed, finding that the state failed to show that the trial court informed the defendant of his right against self-incrimination. Specifically rejected by the appellate court was the state's use of the advice regarding the privilege against self-incrimination that the defendant had received a year earlier when he signed a form waiving his right to a preliminary hearing. The supreme court reversed the appellate court, finding:

> We need not reach that question because we find that the Fifth Circuit panel erred in reversing the trial court's judgment and granting the defendant's motion to quash the indictment solely on the basis of the perceived defect in the plea colloquy relating to defendant's Fifth Amendment privilege. While the available contemporaneous record of the guilty plea shows that defendant did not receive advice with respect to his privilege against self-incrimination, the record also reveals that he otherwise entered knowing and voluntary guilty pleas that would likely withstand scrutiny on collateral attack in their home state. Under these circumstances, enforcing Louisiana's rules for taking guilty pleas against these out-of-state convictions would neither advance the policies underlying the requirements for a knowing and voluntary guilty plea in this state nor promote the fundamental fairness that this Court's jurisprudence regarding collateral attacks on guilty pleas used to enhance a defendant's sentence has sought to protect.

> According to the transcript of the plea colloquy on August 10, 2004, the trial judge in the Criminal Court of Tennessee at Memphis reviewed the charges to which defendant was entering pleas of guilty, the factual bases for the pleas, and the sentences negotiated with the state as part of a plea bargain. Thereafter, the court conducted the following exchange with defendant:

> Q. You understand you don't have to plead guilty?

A. Yes, sir.

Q. All right. [Defense counsel] presented you with two documents for you to sign, one a petition for waiver of trial by jury. That's this document. It explains your rights, right to a jury trial, right to confront witnesses, right to bring in witnesses to testify for you, right to testify yourself, tell your side of it.

If you were convicted by a jury, the Court would fix your punishment and you could appeal it. If you didn't have a lawyer, the Court would appoint a lawyer for you. All of the rights I have explained are in that document.

And he presented you with a notice of enhanced punishment, which puts you on notice that if you pick up another DUI, they may treat it as a second or third, I don't know, but the punishment will be greater on a second. You have to serve at least 45 days in jail. And on the third, a minimum of 120 days in jail and the appropriate fines. Do you understand that.

A. Yes, sir.

Q. Knowing all that, you still want to plead guilty?

A. Yes, sir.

Q. Are you satisfied with [defense counsel's] representation?

A. Yes, sir . . . . [but] if I had gone to trial, what would the maximum punishment have been?

Q. Well, didn't he go over that with you and explain it to you? I told you in this document that you signed, notice of enhanced punishment, it points out that the punishment for a DUI first offense is from $350 to $1500 in fines and 48 hours. Second offense up to 11 months and . . . 45 days in jail, $600 to $3500 in fines. Your third offense would be $1100 to $10,000 in fines and a minimum of 120 days in jail.

A. I understand now.... That's all.

Q. All right. Are you sure you understand everything?

A. Yes, sir.

Q. All right. I'll accept Mr. Balsano's pleas.

10

When the state requested a transcript of this guilty plea colloquy, it also asked Tennessee officials for a *Boykin* or waiver of rights form or court minutes reflecting the waiver of defendant's rights. The Tennessee officials supplied the transcript of the plea colloquy and the waiver of a preliminary hearing executed by the defendant but did not provide either the guilty plea form to which the colloquy referred or the contemporaneous minutes of the plea. Thus, as the Fifth Circuit panel emphasized in its decision, the available contemporaneous records from Tennessee failed to establish that defendant received advice with respect to his privilege against self[-] incrimination at trial, advice required not only by Louisiana but also by Tennessee law.[1]

_____

1    *See* Tenn.R.Crim.P. 11(b)(1)(the court shall personally inform defendant in open court of his: (D) right to plead not guilty or, having already so pleaded, to persist in that plea; (E) right to a jury trial; (F) right to confront and cross-examine adverse witnesses; (G) right to be protected from compelled self-incrimination; and (H) that if he pleads guilty or nolo contendere, "there will not be a further trial of any kind except as to sentence.")

Only four months after this Court adopted its three-right rule following the decision in *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) (waiver of the right to trial encompasses waiver of the privilege against self-incrimination, the right to trial by jury, and the right to confront one's accusers), *see State ex rel. Jackson v. Henderson*, 260 La. 90, 255 So.2d 85 (1971), we acknowledged that the rule reflected a minority view, that a majority of state decisions required "only that the trial judge canvass the matter with the defendant to verify that the plea is freely and understandingly made," and that the rule was not constitutionally required. *State ex rel. LeBlanc v. Henderson*, 261 La. 315, 259 So.2d 557, 563 (1972). We thus observed that " '[t]he new element added in *Boykin* was the requirement that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily.' " *LeBlanc*, 259 So.2d at 560 (quoting *Brady v. United States*, 397 U.S. 742, 747, n. 4, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747 (1970)). Nevertheless, while recognizing that in the majority of state jurisdictions "the failure to articulate all three rights (jury trial, confrontation, and self-incrimination privilege) does not invalidate the conviction," *LeBlanc*, 259 So.2d at 563, the Court resolved to apply the three-right rule adopted in *Jackson* as an interim measure until "the state and federal jurisprudence solidifies." *Id.*, 259 So.2d at 563. However, because *Jackson's* rule was not constitutionally required, this Court made it prospective only from the date of *Jackson's* finality, December 8, 1971. On collateral attack of those Louisiana guilty pleas entered before December 8, 1971, the Court resolved in *LeBlanc* to apply constitutional standards for determining the validity of the plea according to whether "the defendant made a voluntary and intelligent choice among available courses of action." *LeBlanc*, 259 So.2d at 564.[2]  On that basis, the Court found that the guilty plea entered by the defendant in 1970, as reconstructed at the evidentiary hearing conducted in post-conviction proceedings, appeared voluntary although he had apparently received only advice

with respect to his right to a trial by jury. *LeBlanc*, 259 So.2d 565 (Barham, J., dissenting) ("The trial judge does not pretend that he explained that a guilty plea was self-incriminating, and that a guilty plea foreclosed the possibility of confrontation of accusers and witnesses.").

Over the course of the following 40 years, *Jackson's* interim rule became a major facet of this Court's jurisprudence and is now a part of statutory law. La.C.Cr.P. art. 556.1. However, instead of solidifying, the jurisprudence fractured along fault lines giving rise to what has been described as a "stuttering approach to the application of federal constitutional law to state court proceedings in Louisiana," *State v. Lewis*, 367 So.2d 1155, 1159 (La.1979), in an area of law "confused almost beyond understanding." *State v. Nelson*, 379 So.2d 1072, 1075 (La.1980) (Dennis, J., concurring). Thus, in the compass of those 40 years, a relatively obscure rule adopted by this Court for cases in which the defendant sought post-conviction relief from remote guilty pleas (of more than six years), and which required him to show more than violation of *Jackson's* three-right rule, *see State v. Cusher*, 400 So.2d 601, 602 (La.1981) ("If the pleas are set aside and a new trial required, it is probable that the state's case, no matter how strong six years ago, would be impossible of proof . . . . Because of the length of time between the pleas and the habeas corpus application, the state is entitled to prove that the pleas by defendant were intelligently and voluntarily made, the fundamental *Boykin* requirement.") (citations omitted), which the Court then applied in the context of habitual offender proceedings under La.R.S. 15:529.1, *State v. Johnson*, 404 So.2d 239, 247 (La.1981), applications later described by the Court as "an aberration," *State v. Shelton*, 621 So.2d 769, 774, n. 11 (La.1993), has now become the rule for collateral attacks in post-conviction proceedings for all final guilty pleas no matter when they occur. *State v. Harris*, 97-1352, pp. 1-2 (La.10/31/97), 702 So.2d 678, 679 (a district court's failure to abide by *Jackson's* three-right rule "does not alone discharge the inmate's burden in post-conviction proceedings of showing, as a basis for vacating that conviction, a constitutional defect in his guilty plea.") (citations omitted). With respect to the issue in the present case, advice regarding the Fifth Amendment privilege against compelled self-incrimination has been deemed essential to a valid guilty plea in Louisiana, *State v. Age*, 417 So.2d 1183, 1189 (La.1982) (on reh'g); *State v. Robicheaux*, 412 So.2d 1313, 1317 (La.1982), except when it is not. *State v. Bosworth*, 415 So.2d 912, 924 (La.1982) (on reh'g) (trial court's failure to mention that defendant was waiving his privilege against self-incrimination did not invalidate the plea colloquy when defendant, a practicing attorney, had actual knowledge of his privilege against self-incrimination); *State v. Bowick*, 403 So.2d 673, 675 (La.1981) (*Boykin* "was not designed . . . to serve as a technical trap for conscientious trial judges who conduct a thorough inquiry into the validity of the plea, as did the trial judge in this case. . . . The trial court's failure to advise defendant expressly that his privilege against self incrimination applied to the trial as well as to the plea (a rather obvious matter of which defendant was possibly aware as

a result of his trial counsel's advice) was not fatal to his plea.") (footnote omitted).

However, this Court has consistently allowed defendants to attack collaterally the validity of guilty pleas used to enhance their sentences, whether in habitual offender proceedings under La.R.S. 15:529.1, *Shelton*, 621 So.2d at 774-80, or in habitual offender D.W.I. prosecutions. *State v. Carlos*, 98-1366 (La.7/7/99), 738 So.2d 556. These challenges are not true collateral attacks in the sense that they seek to vacate the prior conviction and sentences but are in the nature of "a defense in a proceeding designed to enhance . . . sentence." *Lewis*, 367 So.2d at ll60. At least initially, this case thus implicates this Court's decision in *Carlos*, which established a three-step analysis for determining the validity of prior DWI guilty pleas for use in enhanced DWI proceedings. Adopting the Court's prior opinion in *Shelton*, and acknowledging the presumption of regularity that attaches to prior final convictions, *Parke v. Raley*, 506 U.S. 20, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992), *Carlos* placed on the state the initial burden of proving the existence of the prior guilty pleas and that defendant was represented by counsel when the pleas were taken. *Carlos*, 98-1366, p. 6, 738 So.2d at 559. If the state meets this initial burden, "the defendant must produce affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea." *Id.*, 98-1366 at 6-7, 738 So.2d at 559. If the defendant makes the required showing, the burden reverts to the state to produce a "perfect" *Boykin* transcript, *i.e.*, one "'which reflects a voluntary, informed, and articulated waiver of the three specific rights mentioned in *Boykin*.'" *Carlos*, 98-1366 at 7, n. 4, 738 So.2d at 559 (quoting *Shelton*, 621 So.2d at 775, n. 12.). Anything less than a perfect transcript, "such as a guilty plea form or minute entry, will require the trial judge to weigh the evidence submitted by both sides and determine whether the defendant's *Boykin* rights were prejudiced." *Id.*, 98-1366 at 7, 738 So.2d at 559. Although *Carlos* did not further define what prejudice to a defendant's *Boykin* rights entailed, this Court made clear in *Shelton* what this third stage requires, *i.e.*, a showing "that defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three *Boykin* rights." *Shelton*, 621 So.2d at 780. *Carlos* spoke more broadly about prejudice to *Boykin* rights because prior DWI convictions used to enhance sentence in many cases, if not most, are misdemeanor offenses as to which the defendant does not have the right to a jury trial, shrinking *Jackson's* three-right rule to two rights. *State v. Jones*, 404 So.2d 1192 (La.1981).

In the present case, the first two stages of *Carlos* coalesced. The transcript of the guilty plea colloquy conducted on August 10, 2004, satisfied both the state's burden of establishing the fact of the prior convictions and defendant's representation by counsel, and the defendant's burden of then showing an apparent infringement of his rights, *i.e.*, the failure of the trial court to advise him of his privilege against compelled self-incrimination at trial. Because the state did not, or could not, supplement this "imperfect" transcript with waiver forms

or minutes from Tennessee which might have made up the difference, *Carlos* apparently dictated the decision of the Fifth Circuit panel in overruling the trial court and quashing the bill of information charging defendant with fourth offense DWI.

However, *Carlos*, and its progenitor *Shelton*, addressed prior Louisiana guilty pleas taken after December 7, 1971. Enforcement of *Jackson's* three-right rule in that context was therefore related to the policies underlying the rule of facilitating the taking of voluntary guilty pleas in Louisiana and of providing an adequate record for review, thereby forestalling the need for later evidentiary proceedings and eliminating post-plea attacks. *Bowick*, 403 So.2d at 675. However, the present case involves guilty pleas taken in another state as to which enforcement of *Jackson's* three-right rule serves none of those purposes.

This case therefore also implicates the Court's decision in *State v. Holden*, 375 So.2d 1372 (La.1979), which involved a defendant's collateral attack on a 1972 federal conviction by way of a guilty plea then used to enhance his sentence under La.R.S. 15:529.1 following his conviction of a subsequent crime. *Holden* sought to reconcile the Court's prior decision in *Lewis* with the Supreme Court's then recent opinion in *United States v. Timmreck*, 441 U.S. 780, 783, 99 S.Ct. 2085, 2087, 60 L.Ed.2d 634 (1979). In *Lewis*, the Court had held that prior guilty pleas used to enhance sentence under La.R.S. 15:529.1 were subject to collateral attack according to *Jackson's* three-right rule, although the guilty plea at issue in *Lewis* had been taken in Louisiana in 1970 and thus appeared governed by the exception to *Jackson's* three-right rule carved out by *LeBlanc* for Louisiana pleas taken before December 8, 1971. *Lewis* conceded as much but observed that *LeBlanc* created its exception in a case on true collateral attack, *i.e.*, in post-conviction proceedings aimed at setting aside the conviction and sentence. The Court declined in *Lewis* to extend the *LeBlanc* exception to cases "in which the collateral effect of a plea of guilty is the issue," *i.e.*, to cases in which the prior conviction is used to enhance sentence in habitual offender proceedings. *Lewis*, 367 So.2d at 1160. *Lewis* held that the failure of the trial court to advise the defendant in his 1970 plea that he was waiving his right of confrontation rendered the plea invalid for habitual sentencing purposes. The decision thereby sanctioned a result that a defendant who could not set aside his guilty plea as invalid could nevertheless escape the consequences of it for subsequent sentencing enhancement on the basis of the *Jackson* rule not in effect at the time the plea was entered.

Four months later, the Supreme Court ruled that the validity of a federal guilty plea may not be collaterally attacked in habeas proceedings under 28 U.S.C. § 2255 on the basis of violations of Fed.R.Crim.P. Rule 11 which are "neither constitutional nor jurisdictional." *Timmreck*, 441 U.S. at 783, 99 S.Ct. 2087. The error in *Timmreck* did not involve advice with respect to trial rights waived by a guilty plea but failure to advise defendant of a mandatory minimum

14

parole term as required under the extant, 1975 version of Fed.R.Crim.P. 11.

In *Holden*, a majority of the Court read *Timmreck* to mean that "[w]hile waiver of the *Boykin*-listed constitutional rights arguably presents a more fundamental deficiency . . . *at the least* . . . in a collateral attack upon a federal guilty plea in an enhanced-punishment proceeding, the burden is upon the accused to show that plea was taken without a waiver of the *Boykin*-listed rights." *Holden*, 375 So.2d at 1374 (emphasis added). However, the Court took from *Timmreck* the broader rule that "federal constitutional law does not require us, on collateral attack, to consider a plea as unknowingly made simply because the record does not affirmatively show waiver of *Boykin*-listed rights." *Holden*, 375 So.2d at 1374. To that extent, we overruled *Lewis* (while maintaining *Lewis* for Louisiana state court guilty pleas taken after December 8, 1971 as a matter of this state's policy) and held that "upon collateral attack the accused has the affirmative burden of showing that he was in fact not advised, either by the court or through his counsel, of the particular consequences of his plea that were not touched upon in an otherwise sufficient colloquy." *Holden*, 375 So.2d at 1374. *Holden* thus obliterated the distinction drawn in *Lewis* between collateral attacks on prior pleas in post-conviction proceedings as opposed to collateral attacks mounted in habitual offender proceedings. *Holden* also equalized non-Louisiana guilty pleas and Louisiana guilty pleas taken before December 8, 1971 when they are used to enhance a defendant's sentence upon conviction of a subsequent crime. For the latter, and thus for the former, the standard has been not the three-right rule of *Jackson* but the constitutional rule of voluntariness applied in *LeBlanc* and in the majority of state jurisdictions at that time, *i.e.*, "the proper standard for determining the validity of a guilty plea is whether it represents a voluntary and intelligent choice among alternative courses of action." *LeBlanc*, 259 So.2d at 563 (citing *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970)).

However, in later decisions, this Court treated *Holden* as merely a burden-shifting case which placed the burden on the defendant to prove on the basis of contemporaneous records that he did not receive his *Jackson* three-right advice and thereby relieved the state of an initial burden of proving that he did receive his three *Jackson* rights. *State v. Bolton*, 379 So.2d 722, 723 (La.1979) (as to non-Louisiana and federal pleas the defendant "has the burden of proving that the plea was involuntary or that (if taken subsequent to *Boykin* ) he did not waive *Boykin* rights"). Thus, in *State v. McGinnis*, 413 So.2d 1307, 1311 (La.1981) (on reh'g), this Court invalidated guilty pleas in the state of Washington to grand larceny because neither the plea colloquy nor the waiver form referred to the defendant's privilege against self-incrimination. Similarly, in *State v. Cressy*, 440 So.2d 141, 143-44 (La.1983), the Court invalidated a federal guilty plea to distribution of heroin in 1972 because the district judge failed to inform defendant of his privilege against self-incrimination, although he did so in a

15

jurisdiction that did not require the advice under Fed.R.Crim.P. 11 as it read in 1972.[3]

In the present case, we now return *Holden* to its original substantive aspect: that for guilty pleas entered in Louisiana before December 8, 1971, and for all non-Louisiana guilty pleas, used to enhance sentence following a subsequent conviction, a defendant does not satisfy his burden of proof on collateral attack merely by presenting contemporaneous records revealing a violation of *Jackson's* three-right rule. He must show, as he must now show under *Harris* in a collateral attack mounted in post-conviction proceedings initiated to set aside the prior conviction and sentence, that his guilty plea was not voluntary as a constitutional matter, *i.e.*, that it did not represent a knowing and voluntary choice among available alternatives.[4] Thus, in a particular case, all three of the *Carlos* steps may coalesce when the prior guilty pleas are from another state. An "imperfect" *Boykin* transcript, *i.e.*, one revealing a violation of *Jackson's* three-right rule, may satisfy the state's initial burden of proving the fact of the conviction and defendant's representation by counsel at the plea taking, the defendant's burden of then proving an apparent defect in the plea colloquy, and the state's ultimate burden of proving, for the non-Louisiana conviction, that the plea was nevertheless voluntary as a constitutional matter and therefore valid for purposes of enhancing the defendant's sentence.

––––––––––––––––––––––––––––

[4]     However, the Court's subsequent decisions in *Shelton* and *Carlos* changed one aspect of *Holden*, which agreed with *Lewis* that collateral attack on a prior guilty plea used to enhance sentence was confined to the contemporaneous records of the guilty plea colloquy. *Holden*, 375 So.2d at 1376; *Lewis*, 367 So.2d at 1160. However, in *Shelton*, the Court overruled that aspect of *Lewis* (and that aspect of *Holden* by implication) and held that a defendant "can attempt to meet his burden of production with a transcript, with testimony regarding the taking of the plea, or with other affirmative evidence." *Shelton*, 621 So.2d at 779, n. 24.

In the present case, we think it clear that the extensive colloquy conducted by the Tennessee judge on August 10, 2004, fully discharged the state's ultimate burden in the present case despite the court's failure to advise defendant specifically that he was waiving his privilege against compulsory self-incrimination at trial. The trial court confirmed on the record the details of his plea bargain with the state regarding sentence, delved into the factual bases of the pleas, spoke with the defendant extensively regarding his understanding of the sentencing consequences carried by the charged crimes, impressed upon him that his guilty pleas would resolve all matters with the state except for sentencing, and informed him that if he persisted in pleading guilty, he would not be coming back to court for a trial in which he could select a jury, challenge the state's witnesses by confronting them before the fact finder, and present his defense by calling in his own witnesses and taking the stand to testify in his own right. The trial court thus advised defendant that his guilty plea waived four specific and essential constitutional trial rights, not only the right to a jury trial and to confront

his accusers, but also his right to compulsory process, *Washington v. Texas*, 388 U.S. 14, 18, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967) ("The right of an accused to have compulsory process for obtaining witnesses in his favor stands on no lesser footing than the other Sixth Amendment rights that we have previously held applicable to the States."), and his right to take the stand to testify in his own defense. *Rock v. Arkansas*, 483 U.S. 44, 51, 107 S.Ct. 2704, 2708-09, 97 L.Ed.2d 37 (1987) ("The right to testify on one's own behalf at a criminal trial has sources in several provisions of the Constitution. It is one of the rights that are essential to due process of law in a fair adversary process.") (internal quotation marks and citation omitted).

In the context of all of the advice given, the trial court's failure to mention specifically a fifth constitutional right, the privilege protecting a defendant from compelled self-incrimination at trial, cannot support a finding that defendant entered each of his guilty pleas without "a full understanding of what the plea connotes and of its consequences." *Boykin*, 395 U.S. at 244, 89 S.Ct. at 1712. We note in this regard that unlike Louisiana and federal statutory law, see La.C.Cr.P. art. 556.1(E) and Fed.R.Crim.P. 11(h), Tenn.R.Crim.P. Rule 11 does not contain a harmless-error provision. However, Tennessee courts apply harmless-error analysis to Rule 11 errors, specifically with regard to the failure to advise defendant of his privilege against compulsory self-incrimination. *Blankenship v. State*, 858 S.W.2d 897, 903-05 (Tenn.1993); *Clark v. State*, 800 S.W.2d 500, 503-04 (Tenn.Cr.App.1990).[5] Thus, we would be particularly reluctant to endorse the Fifth Circuit panel decision in the present case to invalidate a conviction that would likely survive collateral attack in the jurisdiction in which it occurred.

_____

[5]    This Court has not yet resolved whether the harmless-error provision of La.C.Cr.P. art. 556.1(E) applies to violations of art. 556.1(A)(3), specifying the trial rights waived by a guilty plea that a trial court must explain to a defendant before it accepts the plea, and incorporating *Jackson's* three-right rule. *Cf State v. Guzman*, 99-1753 (La.5/16/00), 769 So.2d 1158 (failure to advise defendant of sentencing range provided by the offense to which he plead guilty as required by art. 556.1(A)(1), and of enhanced penalties for subsequent offense as required by (then) art. 556.1(E) (rewritten to present form in 2001 La. Acts 243) harmless). However, as does Tennessee, federal courts subject errors with respect to so-called *Boykin* defects to harmless-error analysis as a matter of Fed.R.Crim.P. 11(h). *See, e.g., United States v. Gomez-Cuevas*, 917 F.2d 1521, 1525-26 (10th Cir.1990) (failure to advise defendant of his right to confrontation and his privilege against self-incrimination harmless); *United States v. Stead*, 746 F.2d 355, 356-57 (6th Cir.1984) (same); *see also United States v. Johnson*, 1 F.3d 296, 301-02 (5th Cir.1993) (application of harmless-error test under Rule 11(h) does not distinguish between "core" and non-core violations of the rule).

Accordingly, the decision of the Fifth Circuit is reversed, the trial court's denial of defendant's motion to quash is reinstated, and this case is remanded to the district court for further proceedings consistent with the views expressed herein.

*Id.* at 476-84 (footnotes two and three omitted).

In the present case, at the motion to quash hearing, the defense informed the trial court that the only documents it had received regarding the May 2011 conviction were true copies of an amended bill of information and minutes of court. No plea form nor certified transcript had been provided, according to defense counsel. In the absence of a perfect transcript, the defense noted that the trial court would have to weigh the evidence submitted by both sides to determine whether Defendant's *Boykin* rights were prejudiced. Acknowledging that the minute entry has been found to suffice in some instances, defense counsel noted that the minute entry in this case simply stated that the court advised Defendant of his rights and he acknowledged that he understood them and wished to waive them. He noted the minutes did not include Defendant's date of birth, his education, or what rights were read to him. Additionally, defense counsel contended that there was no strict compliance with La.Code Crim.P. art. 556 at the 2011 proceeding.

The State provided to the defense and the court a transcript of the May 12, 2011 guilty plea, to which the defense objected as being a copy and not properly certified by the "preparer." The State disagreed, noting that the transcript bore the signature (signed in 2013) and seal of the court reporter who transcribed the proceeding. The State's position was that this sufficed to prove Defendant knowingly and intelligently waived his *Boykin* rights.

The trial court stated that it could take judicial notice of the fact the transcript was part of the Evangeline Parish court record because the State received it from the Evangeline Parish clerk of court's office where it had been certified and placed in their record in 2013.

To this, the defense argued that the amended bill of information and the minute entry were stamped as true copies when provided by the clerk of court's office in March of 2021, but the transcript was not. The State then noted:

18

the clerk of court when ordered stamped the pages that she will testify stamped even though not on every individual page was a stamp to certify the record completely. That's why she was subpoenaed to come to court to testify that that is a complete and true record of everything that they have.

The trial court denied the motion to quash, noting that the deputy clerk of court's failure to certify the transcript as a true copy was something legitimate to cross-examine her about at trial. However, this did not occur because Defendant entered a guilty plea.

We find the State met its initial burden of proving the existence of the 2011 guilty plea and that Defendant was represented by counsel through the court minutes and bill of information, both of which are true copies and are thus not contested by Defendant. At the hearing, and again on review, the argument raised by Defendant is that an "un-certified" transcript cannot be used to establish a proper Boykinization. This does not suffice as evidence of an infringement of Defendant's rights or of an error in the taking of the plea. But, even assuming it does, for the prior conviction to be utilized, the State had to present a perfect *Boykin* transcript, which, according to *Carlos* and *Shelton*, is one that shows a voluntary and informed waiver of the three specific *Boykin* rights. The transcript of the 2011 guilty plea produced by the State reflects that Defendant was advised that if he pled guilty, he would waive and give up his legal and constitutional rights, which included his right to trial, right to silence, and right to confront and cross-examine any witnesses against him. Defendant indicated he understood everything that the trial court had said, and he entered a guilty plea to DWI, second offense.[2]

Additionally, there is no merit to Defendant's claim that his 2011 guilty plea could not be used due to non-compliance with La.Code Crim.P. art. 556; specifically

---

[2]While *Boykin* requires defendants to be told of their right to a trial *by jury*, Defendant was not entitled to a jury trial for his misdemeanor 2011 DWI, second offense, charge.

19

that he was not apprised of the maximum and minimum sentence or that his conviction could be used to enhance the grade or penalty for a subsequent offense.

While La.Code Crim.P. art. 556 does require a trial court to advise a defendant of the nature of the charge and the mandatory minimum and possible maximum penalty provided by law, there is no requirement that the trial court advise that the conviction could be used for enhancement purposes. The transcript of the 2011 plea proceeding does not include an advisement of the minimum and maximum penalties for DWI second offense, but Defendant points to no jurisprudence requiring such for that plea to be used as a prior offense for DWI fourth offense. Additionally, the jurisprudence discussed above does not require such. Accordingly, this assignment of error has no merit.

## ASSIGNMENT OF ERROR NUMBER TWO

Defendant contends his sentence is excessive, that the trial court did not review the Presentence Investigation Report, and the trial court failed to take into consideration the cost of jailing an elderly inmate with health problems. For the reasons discussed in the error patent section, this claim is moot.

## PRO SE ASSIGNMENT OF ERROR

Defendant requests this court order the trial court to reduce his twenty years to no more than ten years to run concurrently with his probation revocation time of eight years. This claim is rendered moot for the reasons discussed in the error patent section.

## DECREE

Defendant's conviction is affirmed, his sentence vacated, and the case remanded for resentencing.

**CONVICTION AFFIRMED;**
**SENTENCE VACATED AND REMANDED FOR RESENTENCING.**